# 14-1315-cv

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆—◆

JOHN CHEN, on behalf of himself and all others similarly situated,

*Plaintiff-Appellant,*

—against—

MAJOR LEAGUE BASEBALL PROPERTIES, INC., THE OFFICE OF THE
COMMISSIONER OF BASEBALL, DBA MAJOR LEAGUE BASEBALL,

*Defendants-Appellees,*

MAJOR LEAGUE BASEBALL, MAJOR LEAGUE
BASEBALL ENTERPRISES, INC.,

*Defendants.*

———————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
13-CV-5494, HONORABLE JOHN G. KOELTL

## BRIEF FOR DEFENDANTS-APPELLEES

ELISE M. BLOOM
MARK D. HARRIS
PATRICK J. LAMPARELLO, III
JOSHUA FOX
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
(212) 969-3000

MARK W. BATTEN
LAURA E. DECK
PROSKAUER ROSE LLP
One International Place
Boston, Massachusetts 02110
(617) 526-9600

*Attorneys for Defendants-Appellees*

## CORPORATE DISCLOSURE STATEMENT PURSUANT TO
## FED. R. APP. P. 26.1 AND SECOND CIRCUIT R. 26.1

Pursuant to Fed. R. App. P. 26.1 and Second Circuit R. 26.1, the undersigned counsel for Defendants-Appellees hereby furnishes the following information:

**1.    The full name of every party or amicus the attorney represents:**

Major League Baseball Properties, Inc.; The Office of the Commissioner of Baseball, d/b/a Major League Baseball; Major League Baseball; Major League Baseball Enterprises, Inc.

**2.    If such party or amicus is a corporation:**

(i)    Its parent corporation, if any:

Defendant-Appellee Major League Baseball Enterprises, Inc. is the parent corporation of Defendant-Appellee Major League Baseball Properties, Inc.

(ii)    A list of stockholders that are publicly held companies owning 10% or more of stock in the party:

No publicly held company owns 10% or more of the stock of any of the foregoing entities.

**3.    The names of all law firms whose partners or associates have appeared for the party in the case or are expected to appear for the party in this Court:**

Proskauer Rose LLP.

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

QUESTIONS PRESENTED ................................................................................3

STATEMENT OF THE CASE ............................................................................3

    A.    Statement of Facts ......................................................................3

    B.    Procedural History .....................................................................5

SUMMARY OF ARGUMENT ...........................................................................7

ARGUMENT .......................................................................................................9

I.    The District Court Correctly Applied the Well-Established
Exemption for Seasonal Amusement or Recreational
Establishments..................................................................................9

    A.    All-Star FanFest is An Exempt Seasonal Amusement or
Recreational Establishment under the FLSA............................10

        1.    FanFest is Unquestionably "Amusement or
Recreational." ................................................................10

        2.    FanFest Is Its Own "Establishment," Separate from the
Multi-Unit Enterprise, MLB..........................................13

        3.    FanFest Indisputably Lasted for Less Than Seven
Months. ...........................................................................16

    B.    Chen Manufactures Limitations Found Nowhere in the
Regulations Or Case Law. .......................................................17

        1.    The Seasonal Exemption Is Not Limited to Retail or
Service Establishments.................................................18

        2.    29 C.F.R. § 779.305 Applies Only to "Separate
Establishments on the Same Premises" and Is
Therefore Inapplicable Here..........................................20

            a.    Judicial Precedent Uniformly Holds that An
"Establishment" at a "Distinct Physical

Location" Is Not Part of a Physically Separate, Multi-Unit Enterprise. ...........................................20

b.   DOL Guidance Dooms Chen's Attempt to Broaden The Definition of "Establishment." .......26

c.   The Field Operations Handbook Comment about "Conventions" Is Ambiguous and Entitled To No Deference ........................................................29

C.   Chen's Proposed Remand is Unnecessary Because the Record is Ample, and the Additional Questions He Poses Are Irrelevant. ...........................................31

II.   Chen Is Not An Employee. ................................................32

A.   The Law Permits Individuals to Volunteer Their Services If They Have No Reasonable Expectation of Receiving Wages. ..................................................34

B.   The Complaint Makes Plain That Chen Was A Lawful Volunteer. ..................................................38

1.   Chen Had No Reasonable Expectation of Wages. .........38

2.   Chen's Attempts to Salvage His Deficient Claim Fall Flat. ..................................................40

a.   Chen Cannot Survive A Motion to Dismiss Through Conclusory Assertions. ..........................41

b.   Chen Cannot Demonstrate A Reasonable Expectation of Compensation Because MLB Provided Him With Swag. ................................41

3.   Chen Does Not State A Viable Claim Regarding "Green Team" Volunteers. ...............................43

CONCLUSION ................................................................45

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*A.H. Phillips, Inc. v. Walling*,
   324 U.S. 490 (1945) ............................................................................................14

*Adams v. Detroit Tigers*,
   961 F. Supp. 176 (E.D. Mich. 1997) ................................................12, 19, 22, 23

*Alfaro Motors, Inc. v. Ward*,
   814 F.2d 883 (2d Cir. 1987) ...............................................................................33

*Arnold v. 1199 SEIU*,
   420 F. App'x. 48 (2d Cir. 2011) ........................................................................33

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) .................................................................................40, 41

*Atkins v. Capri Training Ctr. Inc.*,
   No. 2:13-cv-06820, 2014 WL 493096 (D.N.J. Oct. 1, 2014) ............................37

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ......................................................................................40, 41

*Brennan v. Ace Hardward Corp.*,
   495 F.2d 368 (8th Cir. 1974) .............................................................................30

*Brennan v. Goose Creek Consol. Ind. Sch. Dist.*,
   519 F.2d 53 (5th Cir. 1975) ..........................................................................24, 25

*Brennan v. Texas City Dike & Marina, Inc.*,
   492 F.2d 1115 (5th Cir. 1974) ...........................................................................11

*Brennan v. Yellowstone Park Lines, Inc.*,
   478 F.2d 285 (10th Cir. 1973) .......................................................17, 18, 21, 24

*Bridewell v. Cincinnati Reds*,
   68 F. 3d 136 (6th Cir. 1995) .........................................................................22, 23

*Brock v. Louvers and Dampers, Inc.*,
　817 F.2d 1255 (6th Cir. 1987) .........................................................................12

*Carver v. City of New York*,
　621 F.3d 221 (2d Cir. 2010) .............................................................................34

*Chessin v. Keystone Resort Mgmt., Inc.*,
　184 F.3d 1188 (10th Cir. 1999) ..................................................................19, 21

*Christensen v. Harris Cnty.*,
　529 U.S. 576 (2000)...........................................................................................31

*Cleveland v. City of Elmendorf*,
　388 F.3d 522 (5th Cir. 2004) .............................................................................34

*E.E.O.C. v. Guardsmark, LLC*,
　No. H-09-3062, 2011 WL 1668400 (S.D. Tex. May 3, 2011) ...........................25

*English v. Ecolab, Inc.*,
　No. 06 Civ. 5672, 2008 WL 878456 (S.D.N.Y. Mar. 31, 2008) ..................14, 15

*Ferrell v. ConocoPhillips Pipe Line Co.*,
　No. 09 CV 00431, 2010 WL 1946896 (C.D. Cal. May 12, 2010) .....................30

*Gagnon v. United Technisource, Inc.*,
　607 F.3d 1036 (5th Cir. 2010) ...........................................................................31

*Genesis Healthcare Corp. v. Symczyk*,
　133 S. Ct. 1523 (2013)........................................................................................34

*Gmurzynska v. Hutton*,
　355 F.3d 206 (2d Cir. 2004) ..............................................................................33

*Hallissey v. Am. Online, Inc.*,
　No. 99 Civ. 3785, 2006 U.S. Dist. LEXIS 12964 (S.D.N.Y. Mar.
　10, 2006) ...................................................................................36, 37, 38, 40

*Herman v. Collis Foods, Inc.*,
　176 F.3d 912 (6th Cir. 1999) .............................................................................31

*Jeffery v. Sarasota White Sox, Inc.*,
　64 F.3d 590 (11th Cir. 1995) .....................................................................passim

*Khulumani v. Barclay Nat'l Bank Ltd.*,
    504 F.3d 254 (2d Cir. 2007) ............................................................33

*Kirkland Masonry, Inc. v. C.I.R.*,
    614 F.2d 532 (5th Cir. 1980) ...........................................................31

*Marshall v. New Hampshire Jockey Club, Inc.*,
    562 F.2d 1323 (1st Cir. 1977).............................................19, 21, 22

*McLaughlin v. Lunde Truck Sales, Inc.*,
    714 F. Supp. 920 (N.D. Ill. 1989)..............................................15, 21

*Mitchell v. Bekins Van & Storage Co.*,
    352 U.S. 1027 (1957).......................................................................15

*Mitchell v. Birkett*,
    286 F.2d 474 (8th Cir.1961) ..................................................15, 21, 24

*Mitchell v. Gammill*,
    245 F.2d 207 (5th Cir. 1957) ..........................................................25

*Morrison v. Int'l Programs Consortium, Inc.*,
    253 F.3d 5 (D.C. Cir. 2001) ............................................................34

*Newman v. Advanced Tech. Innov. Corp.*,
    749 F.3d 33 (1st Cir. 2014)..............................................................31

*Okoro v. Pyramid 4 Aegis*,
    No. 11-C-267, 2012 U.S. Dist. LEXIS 56277 (E.D. Wis. Apr. 23,
    2012) ...................................................................................33, 36, 38

*Pani v. Empire Blue Cross Blue Shield*,
    152 F.3d 67 (2d Cir. 1988) ..............................................................10

*Perez v. Sanford-Orlando Kennel Club, Inc.*,
    469 F. Supp. 2d 1086 (M.D. Fla. 2006)..........................................19

*Reich v. Parker Fire Prot. Dist.*,
    992 F. 2d 1023 (10th Cir. 1993) ......................................................38

*Renstrom v. Nash Finch Co.*,
    787 F. Supp. 2d 961 (D. Minn. 2011)..............................15, 18, 24, 25

*Rogers v. Schenkel*,
    162 F.2d 596 (2d Cir. 1947) ........................................................................35, 37

*Roman v. Maietta Constr., Inc.*,
    147 F.3d 71 (1st Cir. 1998).............................................................................35

*Skidmore v. Swift & Co.*,
    323 U.S. 134 (1944)....................................................................................13, 26

*Solis v. Laurelbrook Sanitarium & Sch., Inc.*,
    642 F.3d 518 (6th Cir. 2011) ...........................................................................38

*Tasini v. AOL, Inc.*,
    851 F. Supp. 2d 734 (S.D.N.Y. 2012), *aff'd*, 505 F. App'x 45 (2d
    Cir. 2012) ..........................................................................36, 37, 43, 44

*Tony and Susan Alamo Found. v. Sec'y of Labor*,
    471 U.S. 290 (1985)...............................................................................passim

*Walling v. Portland Terminal Co.*,
    330 U.S. 148 (1947)...........................................................33, 34, 37, 44

*Wang v. Hearst Corp.*,
    No. 12 Civ. 793, 2013 U.S. Dist. LEXIS 65869 (S.D.N.Y. May 8,
    2013) ...........................................................................................................33

*West v. City of Ft. Pierce, Fla.*,
    No. 07-14335-CIV, 2008 WL 3270849 (S.D. Fla. Aug. 8, 2008).....................21

*Wirtz v. Campus Chefs, Inc.*,
    303 F. Supp. 1112 (N.D. Ga. 1968)............................................................25, 26

*Wright v. Adventures Rolling Cross Country, Inc.*,
    No. 12 Civ. 982, 2013 WL 1758815 (N.D. Cal. Apr. 24, 2013) ........................15

## STATUTES

29 U.S.C. § 203(g) ..............................................................................................34

29 U.S.C. § 203(m) .............................................................................................36

29 U.S.C. § 206(a) ..............................................................................................34

29 U.S.C. § 213(a)(3)....................................................................................passim

29 U.S.C. § 213(a)(3)(A) ...................................................................8, 10, 16

29 U.S.C. § 213(a)(3)(B) ...........................................................................6

Equal Pay Act..........................................................................15, 18, 24

Fair Labor Standards Act ("FLSA") ..................................................passim

New York Labor Law ("NYLL") .........................................................5, 6, 33

Pub. L. No. 87-30, 9(a)(2)(ii), 75 Stat. 71 ...............................................11

**OTHER AUTHORITIES**

29 C.F.R. § 553.106(a)...............................................................................36

29 C.F.R. § 779 ........................................................................................18

29 C.F.R. § 779.23 .................................................................13, 14, 15, 18

29 C.F.R. § 779.203 .................................................................................13

29 C.F.R. § 779.303 .................................................................................14

29 C.F.R. § 779.305 ...........................................................................passim

29 C.F.R. § 779.385 ...........................................................................11, 12

29 C.F.R. § 1620.9 .............................................................................24, 25

29 C.F.R. § 1620.9(a)...............................................................................24

29 C.F.R. § 1620.9(b) ...............................................................................24

Dept. of Labor, Opinion Letter, 1999 DOLWH LEXIS 102, at *2
   (Sept. 22, 1999)......................................................................................28

Dept. of Labor, Opinion Letter, FLSA2003-1, 2003 ...............................26

Dept. of Labor, Opinion Letter, FLSA2004-6NA, 2004 ........................28

Dept. of Labor, Opinion Letter, FLSA2004-6NA, 2004 WL 5303034,
   at *3 (Aug. 4, 2004)..............................................................................32

Dept. of Labor, Opinion Letter, FLSA2006-37, 2006 WL 3227792, at
   *1-2 (Sept. 28, 2006) ........................................................................29

Dept. of Labor, Opinion Letter, FLSA2006-39 (Oct. 12, 2006) ............................27

Dept. of Labor, Opinion Letter, FLSA2009-5 (Jan. 14, 2009)...............................17

Dept. of Labor, Opinion Letter, FLSA2009-11, 2009 WL1788159, at
   *2 (Jan. 15, 2009) ...........................................................................28

Fed. R. App. P. 32(a)(5)........................................................................46

Fed. R. App. P. 32(a)(6)........................................................................46

Fed. R. App. P. 32(a)(7)(B)....................................................................46

Fed. R. App. P. 32(a)(7)(B)(iii) ...............................................................46

Fed. R. Civ. P. 12(b)(6)..........................................................................3

H.R. Rep. No. 871, 89th Cong., 1st Sess. 35 (1965) ........................................11, 12

http://www.dol.gov/elaws/esa/flsa/docs/volunteers.asp (last visited
   Nov. 4, 2014) ................................................................................38

*Legis. History of the Fair Labor Standards Amendments of 1977* at
   549-50 (1977)................................................................................12

## INTRODUCTION

Appellant John Chen freely chose to volunteer for a few hours over three days at a "baseball theme park" that was open less than a week. He had no reasonable expectation of either wages or any permanent job with the Appellees.[1] More than six decades of case law and regulations uniformly permit such volunteering and reject Chen's claim that he should have been paid wages as an "employee."

Like Oz commanding Dorothy to "pay no attention to that man behind the curtain," Chen directs the Court away from the quite simple legal principles that govern this case, and toward a welter of ad hominem attacks and irrelevant baseball trivia. The first twenty pages of his brief cover everything from the 1869 Cincinnati Red Stockings to the history of baseball-card collecting, stopping along the way to disapprove of MLB's antitrust exemption and its revenues, to describe a claim by security guards against the San Francisco Giants, and even to remark on fans' recent favorite baseball cards.

That campaign of misdirection starts with the first sentence of his brief. This case is not at all about MLB seeking to escape Fair Labor Standards Act ("FLSA") coverage "for employees who work in its far-flung broadcasting, licensing, and marketing activities held throughout the year," as he suggests. (Pl. Br. 1.)[2] MLB has never so contended. Rather, it is strictly about whether MLB

---

[1] Major League Baseball Properties, Inc. ("MLB Properties") and/or The Office of the Commissioner of Baseball, d/b/a Major League Baseball ("BOC") (collectively, "MLB").

[2] References to Chen's brief are cited herein as "Pl Br."

may have volunteers during a five-day recreational even that is held in a different location each year.

The law, which has not changed in more than sixty years, holds in judicial decisions, straightforward Department of Labor ("DOL") regulations ("Regulations") and DOL administrative interpretations that amusement or recreational events held at a location distinct from the rest of a business enterprise are exempt from the FLSA if they do not last for more than seven months in a year. The event in question here, MLB Properties' All-Star FanFest, is a five-day exposition offering baseball fans the opportunity to practice pitching, batting, and fielding, to get players' autographs, to visit exhibits about the history of baseball, and to make their own baseball cards. It is unquestionably a seasonal amusement or recreational event that fits comfortably within the four corners of the exemption. In his insistence that the exemption requires some deeper analysis, Chen misrepresents the applicable regulations and manufactures a fact-intensive test that no court or agency has ever applied in remotely comparable circumstances.

Chen's mischaracterization of the exemption is sufficient to dispose of his claim, but the fault in his legal theories runs even deeper. Although the district court elected not to reach the issue, Chen's claim fails even before reaching the affirmative defense of the seasonal exemption, because he cannot make the threshold showing that he is an "employee" within the meaning of the law. On the undisputed facts that he himself has pleaded, Chen was a lawful volunteer, and his claim cannot succeed. The district court's judgment should be affirmed.

## QUESTIONS PRESENTED

1.      Does the FLSA's seasonal exemption for amusement and recreational establishments apply to MLB Properties' All-Star FanFest, described in the complaint as an "interactive baseball theme park" that lasted just five days?

2.      Did Chen fail to make the threshold showing that he is an "employee" within the meaning of the FLSA, where he volunteered for his own purposes and without any reasonable expectation of wages?

## STATEMENT OF THE CASE

### A.      Statement of Facts

The relevant facts, as distinguished from the potpourri that Chen presents, are few and simply stated.  As required on a motion pursuant to Fed. R. Civ. P. 12(b)(6), they are taken from Chen's First Amended Complaint (the "Complaint") or documents referenced therein, and are assumed to be true for current purposes.

Each July, an American city hosts baseball's All-Star Game, a contest of the "top players in each league."  (Plaintiff's Appendix ("PA") 19, ¶ 61.)[3] Hosting the All-Star Game and related events provides each city an opportunity to heighten its profile and attract tourists to the area.  (PA-13-14, ¶ 22 (noting that "the 2013 All-Star Game and related events, including FanFest, brought approximately $191.5 million into the New York City economy").)  New York hosted the event in 2008

_____

[3] Chen filed his appeal brief without having contacted MLB in advance regarding the contents of any potential joint appendix.  Instead, Chen filed his brief with his own appendix (referenced herein as "PA").  Accordingly, MLB is filing with its brief a Supplemental Appendix, which contains documents from the Record on Appeal that are relevant to the issues on appeal and to which MLB will refer when defending against Chen's appeal.

and 2013. (PA-15, ¶ 34; PA-16, ¶ 40.) In 2011, All-Star FanFest was held in Phoenix, Arizona and in 2012, All-Star FanFest was held in Kansas City, Missouri. (PA-16, ¶ 40.) Chen volunteered at the 2013 All-Star FanFest in New York. (PA-18, ¶ 50.)

For several days surrounding each All-Star Game, MLB and the local club host related events, including All-Star FanFest, described as an "interactive baseball theme park" that is "baseball heaven on earth." (PA-9, ¶ 1; PA-19, ¶ 62.)

All-Star FanFest 2013 was held at the Jacob K. Javits Center in New York. (PA-34-35, ¶¶ 156-173.) It was open for five days, from July 12 to July 16, 2013, and offered over 40 attractions for fan amusement and recreation, including, among other things: player appearances and free autograph opportunities from baseball legends; batting cages; simulated fielding practice; a station to measure the speed of the fan's pitch; "Steal a Base, Steal a Taco"; the "All-Star Video Game Zone"; exhibits on the history of the game; the World's Largest Baseball; and a station for fans to create their own baseball cards. (PA-13, ¶ 18; PA-27-28, ¶ 123; Supplemental Appendix ("SA") 8 (depicting a floor-map of FanFest with "[o]ver 450,000 square feet to hit, pitch, catch, shop, eat & live baseball!").)

Chen took several affirmative steps to secure a spot as a All-Star FanFest volunteer, including providing information for a background check, creating an online profile at MLB.com, attending a volunteer information session on June 1, 2013, and selecting the specific volunteer opportunities that best suited his interests and schedule. (PA-34, ¶ 159; SA-4-6.) Chen knew that he would not be paid wages. (PA-34-35, ¶¶ 157-173.) Chen and other prospective volunteers were

provided the basic information regarding volunteering as part of the Frequently Asked Questions ("FAQ") page for All-Star FanFest 2013:  they would receive a shirt and cap, to identify them as volunteers, and a cinch drawstring backpack, for their possessions while volunteering; they would be asked to donate three shifts of their time; they would be given a volunteer credential that would give them and a guest access to All-Star FanFest; and they would have an opportunity to win a pair of tickets to the All-Star Game.  (PA-10-11, ¶ 6; PA-15, ¶ 31; *see also* SA-4-6.) All-Star FanFest volunteers also were given a few mementos (a baseball and water bottle).  (PA-10-11, ¶ 6.)  Chen and other volunteers "were not provided rehabilitation, food, clothing, or shelter."  (PA-25, ¶ 105.)

Chen volunteered 14 hours of his time at All-Star FanFest over the course of three days on Friday, July 12, Saturday, July 13, and Tuesday, July 16, 2013, and three other hours in an orientation session.  (PA-34, ¶¶ 157-161.)  Chen did not allege any further contact or relationship with either MLB Properties or BOC after his third day at All-Star FanFest.

## B.    Procedural History

Chen filed suit on August 7, 2013, alleging that he should not have been allowed to volunteer, and that defendants' failure to pay him minimum wage violated the FLSA and the New York Labor Law ("NYLL").  (PA-3.)  Chen stipulated to the dismissal of defendants Major League Baseball Enterprises, Inc. and Major League Baseball.  (PA-4-5.)

MLB moved to dismiss, arguing that All-Star FanFest was a seasonal amusement or recreational establishment exempt from the FLSA pursuant to 29

U.S.C. §213(a)(3), and in any event that Chen was a lawful volunteer because he had volunteered for his own purposes and without a reasonable expectation of compensation. In response, Chen amended his complaint, adding, among other things, some conclusory allegations that he and volunteers "contemplated compensation," "did not intend that their services were to be rendered without compensation," "did not work for MLB solely for their own personal purpose or pleasure" and the like. (PA-23, ¶ 92; PA-25, ¶ 100; PA-26, ¶¶ 109, 112.)

MLB thereafter renewed its motion to dismiss the amended complaint.[4] The district court granted MLB's motion, dismissing Chen's FLSA claims on the merits and declining to exercise supplemental jurisdiction over the NYLL claims.[5] The court also denied Chen's separate motion for conditional certification of a collective as moot. (PA-7.)

In its 27-page opinion, the district court reasoned that it was plain "on the face of the complaint" that All-Star FanFest qualified as an exempt seasonal amusement or recreational establishment. (PA-51.) The court noted that Chen had conceded that All-Star FanFest was "amusement or recreation," a "sports event" or "theme park" that was "widely recognized as covered by the exemption." (PA-52,

---

[4] In its renewed motion, MLB argued that FanFest was exempt because it lasted less than seven months per year, reserving for a later date the right to argue that it is also exempt under the alternative "receipts test" of 29 U.S.C. § 213(a)(3)(B), which extends the exemption even to establishments that operate for more than seven months per year so long as their receipts for any six months of the year do not exceed one-third of the receipts for the other six months. (PA-6.)

[5] The court dismissed both the FLSA minimum wage claim and the FLSA recordkeeping claim. The parties agreed that dismissal of the FLSA minimum wage claim required dismissal of the FLSA recordkeeping claim. (PA-49.)

55-56.)  The court then rejected Chen's argument that All-Star FanFest could not be distinguished as a separate "establishment" from MLB, and held that "in light of the statutory language, the legislative history, and the relevant administrative interpretations," the Complaint established that All-Star FanFest qualified for the §213(a)(3) exemption.  (PA-55.)  The court held that Chen's argument for subsuming All-Star FanFest within MLB as a whole "is contradicted by the clear import of the relevant DOL regulations, the validity of which has not been challenged, and which, in any event, are persuasive and therefore entitled to deference."  (PA-57.)  The court also rejected Chen's argument, made for the first time at the hearing and repeated in this Court, that the narrow definition of an "establishment" should apply only to retail businesses.  (PA-64 n.9.)  The court found Chen's arguments "without support in the text of the statute, the regulations, or the relevant case law."  (PA-65 n.9.)

## SUMMARY OF ARGUMENT

Ignoring the actual issue decided by the district court, Chen claims on appeal that the district court erred in dismissing his FLSA claim because MLB should not be wholly exempt from the FLSA.  This was not the issue decided by the district court, nor was it the basis of MLB's motion to dismiss.  (*See infra* at Section I.)

Instead, the district court correctly dismissed Chen's claims because All-Star FanFest, the event at which Chen volunteered, satisfies the FLSA exemption for seasonal amusement or recreational establishments.  Under the applicable exemption, the overtime and minimum wage provisions of the FLSA do not apply

to "any employee employed by an establishment which is an amusement or recreational establishment . . . [if] it does not operate for more than seven months in any calendar year . . . ." *See* 29 U.S.C. § 213(a)(3)(A). (*See infra* at Section I.) First, there is no question that All-Star FanFest is "amusement or recreational" because it is a sports event. (*See infra* at Section I.A.1.) Second, All-Star FanFest is its own establishment because it is physically distinct from MLB. (*See infra* at Section I.A.2.) Third, FanFest lasted only for five days during 2013 – significantly below the seven month threshold set forth in the statute. (*See infra* at Section I.A.3.)

Chen's suggestions that the district court was wrong in deciding that All-Star FanFest satisfies the seasonal amusement exemption are unavailing. Despite Chen's argument to the contrary, there is no support for his suggestion that the exemption applies only to retail or service establishments. (*See infra* at Section I.B.1.) Likewise, the Court should disregard Chen's argument that it should adopt the test under 29 C.F.R. § 779.305, because that Regulation only applies to separate establishments on the same physical premises – a situation that does not exist here. (*See infra* at Section I.B.2.) Further, Chen's desperate attempt at remand rings hollow. There simply are no factual questions that need to be answered. To the contrary, Chen's own allegations sufficiently demonstrate that the seasonal exemption applies. (*See infra* at Section I.C.)

Finally, despite the fact that the district court did not reach the argument as to whether Chen was a volunteer, Chen's claim fails for this additional and independent reason as well. Chen volunteered a brief amount of his time at

FanFest without any reasonable expectation of receiving wages. Indeed, it was made abundantly clear to Chen before he began volunteering that he would not receive any wages, nor would he receive any benefits that would make him economically dependent on FanFest, such as board, food or lodging. Under these circumstances, he was not an employee of MLB; Chen was a volunteer. (*See infra* at Section II.)

## ARGUMENT

**I.     The District Court Correctly Applied the Well-Established Exemption for Seasonal Amusement or Recreational Establishments.**

Chen begins his effort to focus on irrelevant subjects with a straw man, urging the Court to reject the phantom notion that MLB is wholly exempt from the FLSA. MLB has never so contended. It has never argued for application of the seasonal exemption to its business as a whole; nor does the district court's opinion either rest on or suggest in any fashion any argument that MLB enjoys some kind of broad exclusion from federal wage laws. Chen's alarmist mischaracterization seems aimed at diverting the Court from the question the district court actually decided, which is far narrower and simpler: whether All-Star FanFest is an exempt establishment within the larger, non-exempt MLB enterprise.

On the question actually at issue, the law is well-settled and the record ample to determine, as the district court did, that even if All-Star FanFest volunteers were to be considered employees under the FLSA (which they are not, as explained in Section II below), Chen's claim fails under the exemption for seasonal amusement or recreational establishments. 29 U.S.C. §213(a)(3); *see* PA-

51 (applicability of the exemption "appears on the face of [Chen's] complaint") (citing *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1988)).

Congress long ago established an exemption from minimum-wage and overtime for "amusement or recreational establishments." According to the statute, the overtime and minimum-wage restrictions of the FLSA do not apply to "any employee employed by an establishment which is an amusement or recreational establishment . . . [if] it does not operate for more than seven months in any calendar year . . . ." *See* 29 U.S.C. § 213(a)(3)(A). Because All-Star FanFest unquestionably (1) was "amusement or recreational," (2) took place solely at a physical location distinct from MLB (the Jacob K. Javits Center in New York), and (3) lasted just five days, it was a properly exempt establishment. Chen's argument is premised on a fatal misreading of the Code of Federal Regulations pertaining to the DOL (the "Regulations"), and his groundless request to narrow the scope of the seasonal exemption would overturn decades of jurisprudence.

## A. All-Star FanFest is An Exempt Seasonal Amusement or Recreational Establishment under the FLSA.

### 1. FanFest is Unquestionably "Amusement or Recreational."

As the district court held and Chen did not dispute below, MLB Properties' All-Star FanFest easily satisfies the "amusement or recreational" component of the exemption.

In 1961, the FLSA was amended to exclude from the minimum-wage and overtime requirements "retail or service establishments," as well as other activities that provide meals or services or sell the temporary use of their premises, such as

hotels, motels, restaurants, and motion-picture theaters. *See* Act of May 5, 1961, Pub. L. No. 87-30, 9(a)(2)(ii), 75 Stat. 71; *see also Brennan v. Texas City Dike & Marina, Inc.*, 492 F.2d 1115, 1118 (5th Cir. 1974). In 1966, Congress expanded the exemption to cover other types of employers, drawing on a 1965 proposed amendment that had included such enterprises as "amusement parks, carnivals, circuses, sports events, pari-mutuel racing, sport boating or fishing . . . ." *See* H.R. Rep. No. 871, 89th Cong., 1st Sess. 35 (1965).[6] As the amendment itself makes clear, and contrary to Chen's suggestions, the primary purpose of the exemption was never to exclude from the minimum wage and overtime requirements only those entities that sold goods. (Pl. Br. 29.)

The district court concluded that All-Star FanFest was indisputably a "sports event, which is among the core categories enumerated in the legislative history and widely recognized as covered by the exemption." (PA-55.) The court's conclusion is supported by the Regulations and well-established case law. *See* 29 C.F.R. 779.385 (defining the phrase to mean "establishments frequented by the public for its amusement or recreation"); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594-95 (11th Cir. 1995) (finding that a Minor League Baseball team at the baseball complex where it plays its games is "an amusement and recreational establishment" because "[s]ports events are among those types of recreational activities specifically considered by Congress to be covered by the exemption"); *see also Texas City Dike & Marina, Inc.*, 492 F.2d at 1118 (noting that § 213(a)(3)

---

[6] *See Texas City Dike & Marina*, 492 F.2d at 1118, n.8 (comparing 29 U.S.C.A. 213(a)(3) with H.R. Rep. No. 871, 89th Cong., 1st Sess. 35 (1965)).

has historically covered "amusement or recreational" events, such as amusement parks and baseball parks and stating that Congress has recognized the following as exempt activities: "amusement parks, carnivals, circuses, [and] sports events") (citing H.R. Rep. No. 871, 89th Cong., 1st Sess. 35 (1965)); *Adams v. Detroit Tigers*, 961 F. Supp. 176, 179 (E.D. Mich. 1997) (noting that "Major [L]eague [B]aseball teams may properly be considered 'recreational' establishments, or establishments designed for 'amusement'").

If All-Star FanFest were characterized as an "amusement park" rather than a "sports event," it still would be "amusement or recreational" in accordance with the exemption. Indeed, Chen cites Senator Helms's statement that the exemption was intended "to ensure that state fairs and similar amusement parks could employ 'high school and college students, schoolteachers, and other supplemental wage earners who are not in the labor market . . . during the summer.'" (Pl. Br. 6.) (quoting *Legis. History of the Fair Labor Standards Amendments of 1977* at 549-50 (1977) (Statement of Sen. Helms)). While the exemption is not limited to *only* those "establishments" that fit the articulated purpose proffered by Senator Helms, All-Star FanFest – which Chen characterizes in the Complaint as "the largest interactive baseball *theme park* in the world" – easily clears this low bar. (emphasis added) (PA-10, ¶ 2; PA-13, ¶ 18; PA-32, ¶ 141; PA-55.) *See also Brock v. Louvers and Dampers, Inc.*, 817 F.2d 1255, 1258 (6th Cir. 1987) (listing "amusement parks" as the first example of an "amusement or recreational establishment" in the legislative history); 29 C.F.R. § 779.385 (also listing

"amusement parks" as an example of "amusement or recreational establishments" under the statute).[7]

### 2. FanFest Is Its Own "Establishment," Separate from the Multi-Unit Enterprise, MLB.

The law clearly distinguishes between an "enterprise" and an "establishment" and the district court aptly differentiated between the two, a distinction Chen would erase. While the exemption applies only to an "amusement or recreational *establishment*," the term "establishment" is not defined by the FLSA. Rather, "establishment" is defined by the Regulations, which courts routinely have followed. The DOL defines "establishment" for several provisions of the FLSA, including and most notably, § 213(a)(3), as a "'distinct physical place of business'" rather than "'an entire business or enterprise' which may include several separate places of business." 29 C.F.R. § 779.23; *see also* 29 C.F.R. § 779.203.[8]

---

[7] Chen does not squarely challenge the district court's finding that FanFest was a "sports event" or "amusement park" sufficient to satisfy the exemption, but asserts for the first time that FanFest is a "convention" that should not be considered an exempt establishment based on a single line in the DOL's Field Operations Handbook. (Pl. Br. 11, 36-38.) Chen's reasoning is flawed and should be rejected. *See* discussion *infra* at Section I.B.2.c.

[8] The district court correctly found (and Chen does not dispute) that the Regulations related to the exemption should be afforded *Skidmore* deference as an "interpretive rule" and must be given weight based on the "thoroughness evident in [their] consideration, the validity of [their] reasoning, [their] consistency with earlier and later pronouncements, and all those factors which give [them] power to persuade . . . ." (PA-58 n.4 (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).) The Regulations are "particularly instructive in this case" because they are "well-reasoned, internally consistent, and generally consistent with judicial interpretations of the exemption" (*id.*), and the Court should similarly defer to them here.

The Regulations note that such a distinction is "consistent with the normal use of the term in business and in government," is "judicially settled," and was "recognized in the Congress in the course of enactment of amendatory legislation." *Id*. § 779.23.

Chen appears to concede the point, agreeing that this is the "ordinary" meaning of the term "establishment," and the one Congress meant to follow. *See* Pl. Br. 2 ("the word is not a term of art; 'Congress used the word "establishment" as it is normally used in business and in government – as meaning a distinct physical place of business'") (quoting *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 496 (1945)); *id.* 28 (noting that the Regulation "give[s] the word its ordinary meaning: a 'distinct physical place of business," rather than 'an entire business or enterprise,' which could 'include several separate places of business.'") (quoting 29 C.F.R. § 779.23).

The Regulations thus distinguish between a single "establishment" at a distinct physical location, and a broader, multi-unit enterprise. 29 C.F.R. § 779.23. Indeed, the Regulations specifically provide that "[t]he term 'establishment,' . . . is not synonymous with the words 'business' or 'enterprise' when those terms are used to describe multiunit operations." 29 C.F.R. § 779.303. As the court held in *English v. Ecolab, Inc.*, No. 06 Civ 5672, 2008 WL 878456 (S.D.N.Y. Mar. 31, 2008):

> Congress chose to use the individual establishment, rather than the entire enterprise, as the business unit for evaluating the applicability of the exemption. An "establishment" is a distinct, physical place of business, while an "enterprise" is the largest unit of corporate

> organization . . . . Thus, the relevant inquiry is . . . whether . . . Plaintiffs were employed by a qualifying establishment at the local or regional level.

*Id*. at *9 (internal citations omitted); *McLaughlin v. Lunde Truck Sales, Inc.*, 714 F. Supp. 920, 925 (N.D. Ill. 1989) (noting that the definition of "establishment" set forth in the Regulations "mirror[s] earlier court opinions" and "[a]ll that is required to create an establishment is a distinct physical place of business").

This understanding of the term "establishment" is not novel. As the court noted in *Renstrom v. Nash Finch Co.*, 787 F. Supp. 2d 961 (D. Minn. 2011), even by 1963, when the Equal Pay Act was added to the FLSA, "the term 'establishment' had repeatedly been held to refer to 'a distinct physical place of business' and not to an entire business or enterprise." *Id.* at 964 (citing *A.H. Phillips, Inc.*, 324 U.S. at 496; *Mitchell v. Bekins Van & Storage Co.*, 352 U.S. 1027 (1957) (per curiam)); *Mitchell v. Birkett*, 286 F.2d 474, 478 (8th Cir. 1961)).

Thus, physical distinctness – rather than operation or control – is determinative, as the district court correctly concluded. Indeed, "[a]rguably, the only reason for defining 'establishment' as a distinct physical place of business [in 29 C.F.R. § 779.23] was so that it could be distinguished from an integrated business enterprise." *Wright v. Adventures Rolling Cross Country, Inc.*, No. 12 Civ. 982, 2013 WL 1758815, at *5 (N.D. Cal. Apr. 24, 2013).[9]

Chen's Complaint makes clear that All-Star FanFest was physically distinct and, therefore, a separate "establishment" from MLB. MLB, he alleged, is "a

---

[9] *See* discussion, *infra*, at Section I.B.2.a. (discussing case law interpreting the term "establishment").

single integrated enterprise," which has its corporate offices at 245 Park Avenue in Manhattan, while All-Star FanFest was a five-day long event that took place at the Jacob K. Javits Center (where MLB otherwise has no operations). (PA-13, ¶ 18; PA-19, ¶ 62; PA-20, ¶ 74; PA-32, ¶ 141; PA-59.) Precedent and legislative history establish that All-Star FanFest is an "establishment" separate from the broader, multi-unit enterprise, MLB.

### 3. FanFest Indisputably Lasted for Less Than Seven Months.

Finally, the exemption requires evidence that the amusement or recreational establishment (again, not the enterprise as a whole) "does not operate for more than seven months in any calendar year." 29 U.S.C. § 213(a)(3)(A). The district court properly found as a matter of law that "what matters . . . is the duration of MLB's operations at the Javits Center . . . not MLB's operations as a whole." (PA-59, 64 n.8 (citing *Jeffery*, 64 F.3d at 590, which notes that "the relevant duration of operations . . . was the time that the Sarasota White Sox and the parent Chicago White Sox operated at the baseball complex in Florida – not the duration of the Chicago White Sox's operations as a whole.").)

The DOL also evaluates the operations of the "establishment," rather than the operations of a broader, multi-unit "enterprise," to determine seasonality, and finds the exemption satisfied even where individuals may work for the larger enterprise for a longer period. For example, the DOL found that "[t]he fact that some lifeguards [may] work more than seven months in the year maintaining the equipment would not serve to deny the exemption . . . provided the establishment (beach) is not open as a recreational facility (*i.e.*, protected swimming) for more

than seven months in any calendar year." *See* Dept. of Labor, Opinion Letter, FLSA2009-5 (Jan. 14, 2009); *see also* Dept. of Labor, Opinion Letter, 1975 DOLWH LEXIS 9 (Feb. 24, 1975) (same); *cf. Brennan v. Yellowstone Park Lines, Inc.*, 478 F.2d 285, 290 (10th Cir. 1973) (holding that the exemption applies to individuals who provide services in the "establishments" at the Park despite "central employees" who performed services at multiple establishments within the Park throughout the year). Moreover, the duration of the "establishment" does not include time spent preparing the premises of the establishment. *See Jeffery*, 64 F.3d at 596 (noting that the "fact that Plaintiff was employed in the off-season months relative to the preparation and maintenance of the baseball fields" is irrelevant to determining the length of the operation of the establishment).

Accordingly, since it is undisputed that All-Star FanFest's operations at the Javits Center lasted only five days during the 2013 calendar year, it is seasonal within the meaning of the exemption.

**B.     Chen Manufactures Limitations Found Nowhere in the Regulations Or Case Law.**

Unable to challenge the application of the exemption's simple requirements to All-Star FanFest, Chen goes looking for some other standard, and comes up with two arguments that are totally unsupported by the case law and Regulations. First, he proposes, based on little more than his divination of what the DOL must have had "in mind" (Pl. Br. 29), that the exemption should apply only to retail establishments, a limitation inconsistent with the Regulations themselves and the uniform case law interpreting them. Second, Chen seizes on 29 C.F.R. § 779.305,

titled "Separate Establishments on the *Same Premises*" (emphasis added), and argues that the standards used in those circumstances should apply even to establishments on *different premises*. This invention misstates the law. Indeed, the Tenth Circuit has held that such an argument "runs directly contrary to the letter and spirit of the Fair Labor Standards Act and does not comport with the cases interpreting that law." *Yellowstone Park Lines*, 478 F.2d at 289.

### 1. The Seasonal Exemption Is Not Limited to Retail or Service Establishments.

Chen suggests that the Court should not defer to the Regulation's clear and unambiguous definition of "establishment" because it appears in a section of regulations whose overall title is "The Fair Labor Standards Act as Applied to Retailers of Goods or Services." 29 C.F.R. § 779. That suggestion contradicts the Regulations themselves, which state that the "establishment" definition applies more generally: "[a]s used in the Act, the term establishment . . . refers to a 'distinct physical place of business' rather than to 'an entire business or enterprise' which may include several separate places of business. . . . *[T]his is the meaning of the term as used in sections 3(r), 3(s), 6(d), 7(i), 13(a), and 13(b) of the Act*." 29 C.F.R. § 779.23 (emphasis added); *see also Renstrom*, 787 F. Supp. 2d at 964 (noting that in 1963, when the Equal Pay Act amended the FLSA, "Congress was not writing on a blank slate," and the definition of an "establishment" for Equal Pay Act purposes already referred to a distinct physical location).

Pursuant to that final sentence of § 779.23, the definition by its terms extends far beyond retailers. Section 3(r) of the FLSA is the general definition of

an "enterprise," reaching any activities performed "by any person or persons for a common business purpose"; Section 3(s) defines enterprises "engaged in commerce," expressly including hospitals and schools. Section 6(d) prohibits sex discrimination relating to all employers.

Unsurprisingly, then, case law has uniformly applied this section of the Regulations to businesses other than retail or service establishments, including amusement or recreational establishments. For example, the court in *Adams*, 961 F. Supp. at 178, adopted the definition of "establishment" as a "distinct physical place of business," and defined the "establishment" there as "the Tigers' establishment at Tiger Stadium, and not the Tigers' organization as a whole." Other courts have also used the "distinct physical place of business" definition when applying the seasonal exemption. *See, e.g.*, *Chessin v. Keystone Resort Mgmt., Inc.*, 184 F.3d 1188, 1192-93 (10th Cir. 1999) (ski resorts); *Marshall v. New Hampshire Jockey Club, Inc.*, 562 F.2d 1323, 1330-31 (1st Cir. 1977) (horse racing track); *Perez v. Sanford-Orlando Kennel Club, Inc.*, 469 F. Supp. 2d 1086, 1090-91 (M.D. Fla. 2006) (greyhound racing track). Chen does not cite *a single case* holding either that the amusement and recreational exemption requires some other definition of "establishment," or that the "distinct physical place of business" definition should be restricted to retail businesses. Any suggestion that the exemption is so limited must be rejected.

>    **2.    29 C.F.R. § 779.305 Applies Only to "Separate Establishments on the Same Premises" and Is Therefore Inapplicable Here.**

Chen's retail-only argument is a warm-up for his principal invention: that a Regulation governing the unique situation of "separate establishments on the same premises" should be applied to establishments that are *not* on the same premises. *See* 29 C.F.R. § 779.305. He finds that Regulation attractive because it imposes a stricter standard for finding a separate establishment, demanding (a) "physical separation from other activities," (b) "functional operation as a separate unit with separate records and separate bookkeeping" and (c) "no interchange of employees between the units." (Pl. Br. 30) (citing 29 C.F.R. § 779.305). In a grand understatement, Chen concedes that the Regulation was devised "primarily" to address the two-businesses-under-one-roof problem. (*Id.* at 31.) In fact, there is no indication that the Regulation applies to *any* other situation. His notion that the Regulation also applies to two businesses under *two* roofs has been expressly considered and rejected multiple times, both by the courts and by the DOL.

>    **a.    Judicial Precedent Uniformly Holds that An "Establishment" at a "Distinct Physical Location" Is Not Part of a Physically Separate, Multi-Unit Enterprise.**

Like the district court, other courts have rejected Chen's argument, finding that physical separation is the sole determinant in defining the appropriate "establishment," and that the multi-factor test Chen proposes is appropriate only when considering multiple potential "establishments" on the *same* premises. Indeed, adopting Chen's redefinition of the term would overturn a number of other

decisions holding that a physically separate place of business was its own "establishment" despite ongoing operations elsewhere of the same enterprise.

For example, the Tenth Circuit rejected an argument that the common operations, marketing, and strategic planning for two ski resorts rendered both resorts a single "establishment" for purposes of the FLSA. *Chessin*, 184 F.3d 1192. The court held that the plaintiff's argument "misconstrue[d] the meaning of 'establishment' under the FLSA." *Id.* (collecting cases). The physical separation between the two resorts, though a mere six miles, was sufficient to render each resort its own separate establishment, regardless of "issues of business integration." *Id.* at 1192-93.[10] Similarly, the Eighth Circuit in *Birkett* held that a physical separation between two commonly owned and operated shops was sufficient to render each a distinct establishment for purposes of the FLSA. 286 F.2d at 477-78; *see also West v. City of Ft. Pierce, Fla.*, No. 07-14335-CIV, 2008 WL 3270849 at *6 (S.D. Fla. Aug. 8, 2008) ("distinct physical location" of theater was dispositive in concluding that it was an "establishment" separate from a larger enterprise); *Lunde Truck Sales, Inc.*, 714 F. Supp. at 925-26.

Confoundingly, Chen seeks support for his obfuscation of the same-premises regulation in *New Hampshire Jockey Club, Inc.*, 562 F.2d 1323, even though that

---

[10] The decision in *Chessin* was consistent with the Tenth Circuit's earlier decision in *Yellowstone Park Lines*, which rejected a district court's conclusion that because various lodging and service businesses in Yellowstone National Park were "proprietarily united and functionally integrated," they constituted one establishment regardless of physical separation. 478 F.2d at 289. Indeed, the Secretary of Labor took the position there that the businesses constituted separate establishments "[b]ased on the geographic separation of the various enterprises." *Id.* at 287.

case concerned two businesses on the same premises. (Pl. Br. 29.)  In *Marshall*, the enterprise argued that a Jockey entity and a Trotting entity – two businesses which offered racing events at the same physical location, albeit at different times during the year, and employed many of the same individuals – should be considered separate "establishments" for purposes of the exemption.  562 F.2d at 1323.  Jockey effectively controlled Trotting's operation, but they had "maintained their separate identities, file[d] separate regulatory reports, maintain[ed] separate records, separate insurance policies with variations in coverage," among other indicia of separateness.  *Id.* at 1329.  The First Circuit held the two to be separate establishments, applying the three-factor test of § 779.305, because at issue was whether "portions of the same business located *on the same premises* constitute[d] more than one establishment."  *Id.* at 1330 (emphasis added).  That case says nothing about a situation, like here, where there is an establishment at a distinct physical location.

Chen's citation to cases involving baseball teams also uses same-premises cases in a failed attempt to justify a rule for businesses on separate premises. *Adams*, *Jeffery*, and *Bridewell v. Cincinnati Reds* (*see* Pl. Br. at 32-34) each involved a suit by plaintiffs who worked in the *same physical location* where the defendant sports team conducted its regular at-home sporting events.  *Adams* was a suit by batboys working alongside the Detroit Tigers at Tigers Stadium, and the court rejected plaintiffs' attempt to define batboys as a separate "establishment" and to liken them to administrative office employees of a sports team.  961 F. Supp. at 179.  The court found that the batboys were part and parcel of the

presentation of baseball to the public, and "more closely resemble ticket takers, ushers and other event personnel," sufficient to constitute a single "establishment" with the presentation of baseball at the stadium.

In *Jeffery*, groundskeepers at a baseball complex in Sarasota, Florida, who mow the lawns and chalk the field lines in preparation for baseball games, brought suit against the White Sox. The court found that the seasonal operation at the complex was only five months – from Spring Training through the end of the season – and, therefore, met the exemption, even though maintenance and preparation of the fields took place during the off-season. Notably, the court never applied a "functional" test, as Chen suggests (Pl. Br. 33-34); the defined "establishment" was a single physical location: the Sarasota, Florida complex. The court never even considered whether the groundskeepers constituted a separate "establishment" from the presentation of baseball at the facility. 64 F.3d at 593; *see also Adams*, 961 F. Supp. at 179 n.5.

Last, *Bridewell v. Cincinnati Reds*, 68 F.3d 136 (6th Cir. 1995), the first of two Sixth Circuit decisions involving a suit for unpaid wages by maintenance workers at the Reds' Riverfront Stadium, is wholly distinguishable: the court concluded that the Reds operated year-round because its "activities at Riverfront are not limited to playing baseball," and found dispositive that the Reds used the plaintiff maintenance workers to operate the scoreboard, concessions and clean the facility for football games. *Id.* at 138. While the football games were also sporting events within the purview of the exemption, the combination of work throughout the year at the same location rendered the "establishment" year-round, and thus not

"seasonal." *Id.* As the district court correctly noted, Chen's reliance on these cases is "misplaced." (PA-63.)

Similarly, *Brennan v. Goose Creek Consol. Ind. Sch. Dist.*, 519 F.2d 53 (5th Cir. 1975), on which Chen also heavily relies (Pl. Br. 33), concerns yet another distinguishable situation: where an employer assigns employees interchangeably to perform identical functions at different locations. *Goose Creek* was an equal pay suit by female school janitors who performed identical work in different schools depending on where the school district assigned them. *Id.* at 56. The Fifth Circuit expressly distinguished the facts before it, wherein "a company's operations at different locations are identical," from the circumstances such as those present in this case and present in *Yellowstone Park Lines* and *Birkett*, discussed above. *Id.* at 57.[11] Where workers are assigned to various work locations to perform identical work throughout the year, such as the janitors in *Goose Creek*, there may exist "unusual circumstances" wherein the locations are part of the same enterprise – a scenario that the Regulations specifically contemplate and distinguish from facts such as those presented here. *See* 29 C.F.R. § 1620.9.[12]

---

[11] The court also held that a stricter rule should apply in cases alleging sex discrimination under Section 6(d) of the Act. *Id.*

[12] Following *Goose Creek* and the passage of the Equal Pay Act, the DOL clarified that, for purposes of that Act, "each physically separate place of business is ordinarily considered a separate establishment" and that only in "unusual circumstances" would two or more physically distinct portions of an enterprise be treated as one establishment. 29 C.F.R. § 1620.9(a). As an example of such "unusual circumstances," the DOL described circumstances much like those in *Goose Creek*, wherein "a central administrative unit . . . assign[s]" locations, and employees "frequently interchange work locations" to perform "virtually identical" duties. 29 C.F.R. § 1620.9(b). "[Section] 1620.9(b) essentially tracks the factors identified in *Goose Creek*." *Renstrom*, 787 F. Supp. 2d at 965.

*Goose Creek* has no application beyond the narrow set of circumstances it addressed, as subsequent decisions have recognized. *See, e.g.*, *Renstrom*, 787 F. Supp. 2d at 965 (emphasizing that *Goose Creek* and 29 C.F.R. § 1620.9 do not "call[] for such a sweeping exception to the geographical rule – an exception that would largely swallow the rule");[13] *see also E.E.O.C. v. Guardsmark, LLC*, No. H-09-3062, 2011 WL 1668400 at *4 (S.D. Tex. May 3, 2011) (distinguishing *Goose Creek* as "the *exception* to the usual rule") (original emphasis).

Two other cases Chen mentions in his discussion of *Goose Creek* – *Mitchell v. Gammill*, 245 F.2d 207 (5th Cir. 1957) and *Wirtz v. Campus Chefs, Inc.*, 303 F. Supp. 1112 (N.D. Ga. 1968) – also are inapposite.  (Pl. Br. 33.)  The "market, liquor store and restaurant operated in conjunction with a neighboring barbeque stand" referenced in *Gammill* were in fact on the same premises.  245 F.2d at 209.  Likewise in *Campus Chefs*, the defendant did not argue that the different cafeterias it operated for a college were separate "establishments"; rather it argued that its overall services for the college did *not* constitute a distinct "establishment" from the college itself.  303 F. Supp. at 1116.  The district court ultimately disagreed and concluded that the defendant corporation *was* a distinct "establishment" from the college, despite its contractual relationship with the college and the physical proximity of the cafeterias and the college.  *Id.*  It did not reach the question of

---

[13] The district court in *Renstrom* further noted that there was nothing "unusual" about a corporation's centralized control over hiring and compensation at various corporate locations: "If such facts were to overcome the 'ordinar[y]' and 'well-settled' rule that physically distinct locations are different 'establishments' . . . then just about any corporation with a hierarchical management structure and a functioning human-resources department would find itself defined as a single 'establishment.'"  787 F. Supp. 2d at 965.

whether the individual cafeterias were distinct "establishments." *Id*. Chen has not – and cannot – point to *any* authority for his argument that the allegations in his Complaint would support a departure from the rule that physically distinct locations are separate "establishments."

### b. DOL Guidance Dooms Chen's Attempt to Broaden The Definition of "Establishment."

Like the courts, the DOL has consistently interpreted the term "establishment" to mean a "distinct physical place of business," and has applied its Regulations with that understanding for decades, warranting *Skidmore* deference. *See, e.g.*, Dept. of Labor, Opinion Letter, FLSA2003-1, 2003 DOLWH LEXIS 2, at *9 (Mar. 17, 2003) (stating that reading "establishment" to mean a "distinct physical place of business" rather than "an entire business or enterprise" is consistent with "[t]he correct interpretation of the FLSA," which "holds to a literal reading of the Act's text"). The DOL has applied the multi-factor test derived from § 779.305 (which Chen proposes) *only* when dealing with multiple establishments on the same physical premises.

The DOL adopted this position as early as 1967, applying the multi-factor test Chen proposes to businesses on the same premises, reasoning that "it is only in rare instances that . . . [such activities] are characterized by the physical and functional separation requisite to constitute more than one establishment for the purpose of the exemptions." *See* Dept. of Labor, Opinion Letter, 1967 DOLWH LEXIS 164, at *2 (June 22, 1967) (internal citations omitted). Since then, the DOL has consistently advised that physical location is the sole factor when

distinguishing an "establishment" from a broader "enterprise" for purposes of the exemption. *See, e.g.,* Dept. of Labor, Opinion Letter, FLSA2006-39 (Oct. 12, 2006) (finding that each vessel of a cruise ship operation is an "establishment" pursuant to the exemption because they are "distinct physical places of business"); Dept. of Labor, Opinion Letter, 1986 DOLWH LEXIS 69, at *5 (May 12, 1986) (the "Department, in interpreting this exemption, has consistently held that an amusement or recreational establishment be a distinct working place for amusement or recreational employees and not an entire enterprise which consists of many separate establishments"); Dept. of Labor, Opinion Letter, 1986 DOLWH LEXIS 17, at *3-4 (Feb. 3, 1986) (distinguishing between employees at city golf courses, swimming pools, summer camps, among others, and central office city employees as separate "establishments" due to their distinct physical locations).[14]

The DOL Opinion Letters that Chen cites are readily distinguishable because they merely continue his effort to apply same-premises authority to separate locations. Chen repeatedly relies on a 2004 Opinion Letter (Pl. Br. 9-10, 30, 34-

---

[14] Indeed, MLB Properties' presentation of All-Star FanFest (and other physically distinct establishments supported by MLB that may take place throughout the country for the public's amusement or recreation) is akin to a city – a large, multi-unit enterprise that operates various amusement or recreational establishments for the public. The DOL has consistently opined that while the city itself, with all its departments and subdivisions, cannot be considered an amusement or recreational establishment for purposes of the FLSA, "employees engaged solely in the operation of amusement or recreational facilities operated on a seasonal basis by the City may qualify for exemption . . . where the tests for exemption are otherwise met." DOL Opinion Letter, 1986 DOLWH LEXIS 69 (May 12, 1986); *see also* DOL Opinion Letter, 1986 DOLWH LEXIS 17 (Feb. 3, 1986) (same). The DOL does not undertake this analysis using the three-part test because the city's main offices are located at physically distinct locations from their seasonal establishments. The same reasoning applies here, and All-Star FanFest's location forecloses any argument that the three-part test should apply.

35) that concerned an effort to distinguish a summer camp from other activities, including a horse-riding camp, on the same physical premises. Chen is correct that the DOL applied the multi-factor test he proposes, but the DOL did so explicitly because "[i]n some cases, two or more physically separated portions of a business *located on the same premises* may constitute more than one establishment." *See* Dept. of Labor, Opinion Letter, FLSA2004-6NA, 2004 DOLWH LEXIS 23, at *3 (Aug. 4, 2004) (emphasis added). It was sufficient that the putative "establishments" were located on the same physical premises for the three-factor test to apply, and because there was no "physical separation" and there was "interchange of employees between the units," the businesses were one "establishment." *Id.* at *4. The Letter offers no authority for applying the multi-factor test where the business under scrutiny stands alone in its own physical location.

Likewise, the 2009 Opinion Letter Chen cites (Pl. Br. 31) concerned two distinct businesses (the concessionaire and the host establishment) operating at the same physical location, as did the 1999 Opinion Letter (Pl.'s Br. 10, 31). *See* Dept. of Labor, Opinion Letter, FLSA2009-11, 2009 WL1788159, at *2 (Jan. 15, 2009); Dept. of Labor, Opinion Letter, 1999 DOLWH LEXIS 102, at *2-3 (Sept. 22, 1999) (analyzing whether several activities on the same premises at a single resort, such as a beach, waterpark, harbor landing for boating, catering service, campground stables, bicycle rental, and haunted house attraction, constituted separate "establishments").

Chen also completely mischaracterizes the 2006 Opinion Letter, which actually supports MLB's position. (Pl. Br. 10.) There, the DOL held that each of 45 base camps located across North America was a separate "establishment," even though they were run by just seven schools. *See* Dept. of Labor, Opinion Letter, FLSA2006-37, 2006 WL 3227792, at *1-2 (Sept. 28, 2006). In that situation, because the "separate base camps are physically remote from one another . . . each base camp would meet the definition of a separate establishment, and exemption status depends upon whether the individual base camp meets the requirements of section 13(a)(3)." *Id.* It was sufficient that the base camps were physically separate, and the DOL did not even cite the multi-factor test derived from 29 C.F.R. § 779.305. Chen speculates that while each base camp was a separate "establishment," each trip or expedition that originated from the camp likely was not. The actual Opinion Letter draws no such conclusion, nor did the DOL actually apply any of the factors in the three-factor test Chen now proposes. To suggest otherwise is simply wrong; the only conclusion that could be reasonably drawn from the Opinion Letter is that physical separation is sufficient to qualify separate FLSA "establishments."

### c. The Field Operations Handbook Comment about "Conventions" Is Ambiguous and Entitled To No Deference.

Chen next attempts to cherry-pick a single sentence from the DOL's Field Operations Handbook (the "Handbook"), an internal document used to provide guidance to DOL employees. Chen argues that the Handbook "draws a bright-line

rule" that a "convention is not considered an exempt establishment." (Pl. Br. 37) (citing the Handbook § 25j05). That entire section reads as follows: "Employees at a convention (including those employed by a concessionaire) are not within the scope of the Sec 13(a)(3) exemption as a convention is not considered an exempt establishment."

This sentence cannot bear the weight that Chen places on it. To begin with, the Handbook gives no definition of what it means by a "convention." There is no case law interpreting the term. It could easily be read to refer to business and sales conventions, which are not for purposes of "amusement or recreation." Indeed, in the one reference to conventions found in any DOL opinion letter (which may be the source of the comment in § 25j05), the Administrator wrote: "Employees at a convention . . . are not within the scope of the exemption provided by [§213(a)(3)] as a convention is not an amusement or recreational establishment." 1967 DOLWH LEXIS 164, at *2-*3 (emphasis added).[15] Since All-Star FanFest is plainly recreational, §25j05 of the Handbook has no application here.

In any event, the Handbook merely provides non-binding guidance to DOL employees; it is without "the force and effect of law." *See Brennan v. Ace Hardward Corp.*, 495 F.2d 368, 276 (8th Cir. 1974); *Ferrell v. ConocoPhillips Pipe Line Co.*, No. 09 CV 00431, 2010 WL 1946896, at *7 (C.D. Cal. May 12,

_____

[15] The Handbook provision Chen cites does not refer to sports events akin to All-Star FanFest. In any event, the exemption's legislative history explicitly provides that "sports events" (like All-Star FanFest) are encompassed by the exemption. *See, supra,* Section I.A.1. Other Circuits applying the exemption have so interpreted Congress' intent and that consistent understanding should trump the single vague sentence from the Handbook upon which Chen relies. *Id.*

2010) (*citing Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000)) (collecting cases); *see also Kirkland Masonry, Inc. v. C.I.R.*, 614 F.2d 532, 533 (5th Cir. 1980) ("Although federal agencies are bound by their own regulations, a simple administrative directive to agency employees does not suffice to create a duty to the public."). Chen argues that the statement in the Handbook "warrants deference." (Pl. Br. 37.) But the cases he cites for this proposition expressly concluded that the Handbook certainly did not "bind" their analysis, rather the courts only "consider[ed]" the Handbook's persuasive effect. *See Newman v. Advanced Tech. Innov. Corp.*, 749 F.3d 33, 37 (1st Cir. 2014); *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1041 n.6 (5th Cir. 2010); *cf. Herman v. Collis Foods, Inc.*, 176 F.3d 912, 920 (6th Cir. 1999) (rejecting application of a statement in the Handbook because it "runs counter" to the FLSA and the Regulations). Here, without any context or explanation of what the DOL meant by that sentence, its persuasive value is nil.

## C. Chen's Proposed Remand is Unnecessary Because the Record is Ample, and the Additional Questions He Poses Are Irrelevant.

The extensive allegations and footnoted references in the Complaint create a broad factual record for early judicial assessment. Nevertheless, the applicable simple legal test requires few facts, at least where the establishment in question is in a distinct physical location: (1) whether the establishment is "amusement or recreational," and (2) whether it lasted less than seven months. *See* discussion, *supra*, at Section I.A.; *see also* PA-13, ¶ 18; PA-32, ¶ 141; PA-45-46; SA-10. Each aspect of the exemption is satisfied according to Chen's own allegations, and

further factual development would only yield the same result, albeit after a significant waste of the parties' and the district court's time and resources.

The additional questions Chen poses – which he argues relate to "whether FanFest operated 'as a separate unit with separate records and separate bookkeeping' and whether there was 'no interchange of employees between units" – are wholly irrelevant, because they are based entirely on Chen's mistaken test. (Pl. Br. 40-41.)  As explained in the very DOL Opinion Letter that Chen cited for this proposition, these questions relate only to a specific factual circumstance not present here: whether "two or more physically separated portions of a business located on the same premises may constitute more than one establishment."  2004 Opinion Letter, 2004 WL 530304, at *3.  Since All-Star FanFest indisputably operated at a distinct physical location, separate from MLB's other operations, it is its own "establishment" under established law.  The district court was correct to dismiss the action, and there is no need to address the litany of questions Chen raises.

## II.    Chen Is Not An Employee.

Chen's Complaint suffers from an even more fundamental flaw than his targeting of an exempt establishment: he cannot make the required threshold showing that his few hours of volunteering make him an "employee" under either federal or state law.  Although the District Court did not reach the argument regarding whether Chen was a volunteer, an order granting a motion to dismiss may be affirmed "on any grounds for which there is a record sufficient to permit

conclusions of law, even grounds not relied upon by the district court." *Gmurzynska v. Hutton*, 355 F.3d 206, 201 (2d Cir. 2004) (quoting *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir. 1987)); *see also Arnold v. 1199 SEIU*, 420 F. App'x. 48, 51-52 (2d Cir. 2011) (affirming district court's dismissal of plaintiff's claim relying on grounds different from those relied on by the district court); *Khulumani v. Barclay Nat'l Bank Ltd*., 504 F.3d 254, 307-08 (2d Cir. 2007).

Courts have held for more than 65 years that the provisions of the FLSA do not apply to a volunteer "who, without promise or expectation of compensation, but solely for his personal purpose or pleasure, worked in activities carried on by other persons either for their pleasure or profit." *Walling v. Portland Terminal Co.*, 330 U.S. 148, 152 (1947); *see also Okoro v. Pyramid 4 Aegis*, No. 11-C-267, 2012 U.S. Dist. LEXIS 56277, at *16 (E.D. Wis. Apr. 23, 2012) (adopting this standard). The same is true under the NYLL. *See, e.g.*, *Wang v. Hearst Corp.*, No. 12 Civ. 793, 2013 U.S. Dist. LEXIS 65869, at *9, n.3 (S.D.N.Y. May 8, 2013) (applying the *Portland Terminal* analysis in assessing whether unpaid interns are employees under the FLSA and NYLL). The Supreme Court's test describes Chen's experience exactly: the Complaint establishes that he chose, for his own reasons and without a reasonable expectation of compensation, to volunteer a bit of time to All-Star FanFest. The Complaint therefore fails to state a claim, and should be dismissed in its entirety.

## A.     The Law Permits Individuals to Volunteer Their Services If They Have No Reasonable Expectation of Receiving Wages.

Whether or not Chen was an employee under the FLSA is a question of law. *See Morrison v. Int'l Programs Consortium, Inc.*, 253 F.3d 5, 10 n.3 (D.C. Cir. 2001); *see also Cleveland v. City of Elmendorf*, 388 F.3d 522, 526 (5th Cir. 2004). The totality of the current circumstances here, as shown on the face of the Complaint, amply demonstrates that Chen was a lawful volunteer.[16]

Chen's insistence that the law requires MLB to compensate casual volunteers like him ignores decades of settled law.  The Supreme Court long ago recognized that while the FLSA requires that "employees" receive a set minimum wage (29 U.S.C. § 206(a)) and defines "employ" as "to suffer or permit to work" (29 U.S.C. § 203(g)), that definition "was obviously not intended to stamp all persons as employees who, without any express or implied compensation agreement, might work for their own advantage on the premises of another." *Portland Terminal*, 330 U.S. at 152.

Shortly after *Portland Terminal*, this Court followed the Supreme Court's decision in considering a volunteer at a for-profit company, finding that the volunteer was not an employee entitled to minimum wages because he had no

---

[16] Although Chen brought this action on behalf of a purported collective, if Chen does not have an individual claim, the entire action must be dismissed and there is no reason to conduct an analysis of any of the purported collective members.  *See Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523 (2013) (ruling that a FLSA collective action is no longer justiciable when the named plaintiff's claim was concededly moot); *Carver v. City of New York*, 621 F.3d 221, 228 n.6 (2d Cir. 2010) ("A class action allegation adds nothing to the standing inquiry since the named plaintiffs 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'").

legitimate expectation of receiving wages for the services rendered. *Rogers v. Schenkel*, 162 F.2d 596, 598 (2d Cir. 1947).

The Supreme Court has since reaffirmed *Portland Terminal*'s holding that volunteers fall outside the purview of the FLSA if they had no reasonable expectation of receiving wages. *See Tony and Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 301-303 (1985) ("*Alamo*"). To resolve this question, courts look at a variety of factors to determine whether, as a matter of "economic reality," the individuals in question are employees. *Id.* at 301, 302 n.25. Primarily, the analysis considers whether the individuals are economically dependent on the proposed employer in the way that employees are, including whether the activity was a full-time occupation and whether the volunteers were dependent upon the putative employer for a lengthy period of time – factors which here all demonstrate that Chen was a lawful volunteer. *See id.*; *see also Roman v. Maietta Constr., Inc.*, 147 F.3d 71, 75 (1st Cir. 1998) (finding that an individual who donated his services at a race track as stock-car crew chief during his spare time "for his personal enjoyment rather than for the benefit of" the putative employer was not entitled to wages).

An "expectation of compensation," the Supreme Court held in *Alamo*, means an expectation of receiving wages or a wage equivalent – "wages in another form" – such that an individual would be economically dependent on the company. 471 U.S. at 301. The Court, relying on the FLSA's definition of "wages," strictly limited a wage equivalent to in-kind benefits that represented economic support for the employee, such as "board, food, lodging, and similar benefits customarily

furnished by the employer to the employees" – the sort of compensation that indicates economic dependence. *Id.* at 301 n.23 (citing 29 U.S.C. § 203(m)).

Subsequent cases confirm that merely offering nominal benefits does not create an expectation of "compensation" within the meaning of the law. For example, in *Hallissey v. Am. Online, Inc.*, No. 99 Civ. 3785, 2006 U.S. Dist. LEXIS 12964 (S.D.N.Y. Mar. 10, 2006), volunteers for America Online ("AOL") were not paid, but were given free AOL access, compact disc cases, discounts, expanded space for web pages and anti-virus software. *Id.* at *5. The court reasoned that "[n]ot all benefits render the recipi[e]nts employees" and that these benefits did not result in the volunteers being "dependent on AOL for their needs such as food, clothing and shelter . . . ." *Id.*; *cf. Okoro*, 2012 U.S. Dist. LEXIS 56277 at *24 (contrasting such nominal benefits with a plaintiff who was not a volunteer because "at all times, she expected to be compensated [$2,000 per month] for her work").[17]

The Southern District of New York reached an analogous conclusion when it held that plaintiffs did not have an expectation of compensation in a claim by former unpaid Huffington Post bloggers against America Online. *Tasini v. AOL, Inc.*, 851 F. Supp. 2d 734, 740 (S.D.N.Y. 2012), *aff'd*, 505 F. App'x 45 (2d Cir. 2012). "No one forced the plaintiffs to give their work to The Huffington Post[,]" the court held; "they never expected to be paid [and they] went into the

---

[17] In the context of volunteers for the government who are not statutory employees, the Code of Federal Regulations provides that "volunteers may be paid expenses, *reasonable benefits*, a nominal fee, or any combination thereof, for their service without losing their status as volunteers." 29 C.F.R. § 553.106(a) (emphasis added).

arrangement with eyes wide open." *Id.* at 741. *See also Atkins v. Capri Training Ctr. Inc.*, No. 2:13-cv-06820, 2014 WL 493096, at \*10 (D.N.J. Oct. 1, 2014) (finding that "no employer/employee relationship existed" because "Plaintiff did not depend on Capri for either her livelihood or continued employment").

None of this analysis turns on whether the putative employer is a for-profit or non-profit business. As the Supreme Court squarely and simply held in *Portland Terminal*, 330 U.S. at 152, individuals may volunteer to work in activities "carried on by other persons either for their pleasure *or profit*" (emphasis added); *see also Alamo*, 471 U.S. at 299, 301-303 (holding that "[a]n individual may work for a covered enterprise and nevertheless not be an 'employee,'" and determining plaintiffs' volunteer status based on whether they had an expectation of wages regardless of the putative employer's not-for-profit status).

This Court similarly held, more than 65 years ago, that individuals may lawfully volunteer for a for-profit entity. *See Rogers*, 162 F.2d at 598. More recent decisions have done the same. *See Hallissey*, 2006 U.S Dist. LEXIS 12964, at \*22 (acknowledging defendant's status as a for-profit company but undertaking an analysis of whether volunteers were actually employees); *see also Atkins*, 2014 WL 493096 at \*8 (rejecting plaintiff's argument that an employer/employee relationship must exist because the defendant is a "for-profit enterprise" and stating that "profitability alone, or lack thereof, is not determinative when assessing the existence of an employer/employee relationship"). In fact, *no court* has ever held

that the law prohibits for-profit businesses from using willing volunteers, particularly where the individual is not economically dependent on the employer.[18]

## B. The Complaint Makes Plain That Chen Was A Lawful Volunteer.

The record demonstrates that Chen was not an employee of MLB. He had no credible expectation of wages or the equivalent, which the Supreme Court has stated is necessary for an employment relationship. *Alamo*, 471 U.S. at 300. Specifically, Chen's Complaint and the documents referenced therein demonstrate that, despite the conclusory allegations to the contrary, Chen and the putative collective members signed up for volunteer opportunities for their own "personal purpose or pleasure," over a very short period of time, fully understanding that they would not receive wages for their services nor a subsequent paying job with MLB.

### 1. Chen Had No Reasonable Expectation of Wages.

The documents in the record, including the Complaint and its attached documents, make clear that Chen and the other volunteers knew that they were registering and arriving at their shifts to *volunteer* for All-Star FanFest over a short

---

[18] The DOL ignores this case law without comment or rationale in stating, in one sentence of informal guidance on its website, that individuals may not volunteer for for-profit entities. *See* http://www.dol.gov/elaws/esa/flsa/docs/volunteers.asp (last visited Nov. 4, 2014). These comments do not have the status of regulations and are owed no deference. Courts repeatedly have found the DOL's judgment as to volunteers and other unpaid workers to be wanting, rejecting such an inflexible, per se rule. *See, e.g.*, *Solis v. Laurelbrook Sanitarium & Sch., Inc.*, 642 F.3d 518, 525 (6th Cir. 2011); *Reich v. Parker Fire Prot. Dist.*, 992 F. 2d 1023, 1026-27 (10th Cir. 1993); *Okoro*, 2012 U.S. Dist. LEXIS 56277, at *20-22; *Hallissey*, 2006 U.S. Dist. LEXIS 12964, at *22-23. Indeed, even the Supreme Court has acknowledged that an individual may provide unpaid services, including as a volunteer, for a "covered enterprise" under the FLSA. *Alamo*, 471 U.S. at 299.

period of time. Chen and the other volunteers knew months in advance that they would not be paid. Indeed, Chen's Complaint expressly states in the first paragraph that "MLB staffed its . . . All-Star Week festivities[ ] with 'volunteers' . . . ." (PA 9, ¶ 1.) Moreover, the 2013 All-Star FanFest FAQs lists sixteen questions referring to individuals who will *volunteer* for FanFest. (SA-5-6.) Chen and the other volunteers had no expectation of wages or similar compensation, were not economically dependent on All-Star FanFest, and freely volunteered for their own purposes.

The extremely brief period of time that Chen and the others volunteered confirms that the "economic reality" of the relationship between the volunteers and All-Star FanFest was not one of economic dependence, which is the hallmark of employment. Chen volunteered for only 14 hours over the course of three days and attended a one-hour information session and a two-hour orientation session, for a total of 17 hours. (PA-34, ¶¶ 157-59; SA-5-6.) The same is true for the other FanFest volunteers, as well as the volunteers for other All-Star Week events – they only volunteered over the course of three days or during the course of a three-hour baseball game. (SA-5-6.)[19]

_____

[19] The brevity of Chen's relationship with FanFest not only highlights the lack of economic dependence, but also distinguishes his relationship with MLB from plaintiffs in other contexts where courts have found employment relationships to exist. For instance, there is no comparison between an individual handing out tickets for a few hours over the course of three days and an individual engaged in a multi-month relationship with an employer to enhance his or her skills with the prospect of receiving a full-time position. *See e.g.*, *Alamo*, 471 U.S. at 301 (finding plaintiffs were employees and distinguishing *Portland Terminal*, because there the "training course lasted a little over a week, [while] in this case the associates were entirely dependent upon the Foundation for long periods, in some cases several years.").

The record also demonstrates that Chen had no expectation of a subsequent paying job from MLB Properties or BOC, which reinforces the notion that he had no implied expectation of wages. The Complaint does not contain an allegation that Chen (or any of the other volunteers) had an expectation of receiving a paid job after the short volunteer stint concluded. To the contrary, the FAQs specifically confirm that each volunteer is needed only for "three shifts/days." (SA-6.) *Cf. Hallissey*, 2006 U.S. Dist. LEXIS 12964, at *19 (the plaintiffs "claim[ed] to have volunteered substantial hours in order to obtain a full-time, paid position with AOL" and "contend[ed] that 'volunteering' for AOL became an unwritten but well-known prerequisite for obtaining a paid position with AOL"). There is no such allegation in the Complaint.

### 2. Chen's Attempts to Salvage His Deficient Claim Fall Flat.

Acknowledging that his claim fails if he cannot show that he and the other volunteers expected compensation, Chen resorts to conclusory assertions and an allegation that "swag" provided by MLB created an expectation of compensation. Chen's allegations in the Complaint of an expectation of compensation are baseless and unreasonable, and, when looked at in a common-sense fashion, are insufficient to demonstrate that Chen was an employee. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (a pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do.").

### a. Chen Cannot Survive A Motion to Dismiss Through Conclusory Assertions.

Chen's Complaint contains naked allegations that he and the other volunteers "contemplated compensation," "did not intend that their services were to be rendered without compensation," "did not work for MLB solely for their own personal purpose or pleasure" and "did not 'donate' their time." (PA-23, ¶92; PA-25, ¶ 100; PA-26, ¶¶ 109, 112.) Chen even goes so far as to acknowledge the need to combat the plain meaning of the word "volunteer," adding an allegation that, despite his use of the term "volunteer" throughout the Complaint, he "does not concede that [Chen] or any other 'volunteers' had no expectation of compensation." (PA-9, ¶ 1 n.1.) These are precisely the types of legal conclusions and threadbare recitations of a cause of action that the Supreme Court holds to be insufficient. *See Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 555. Chen, despite his protestations, cannot simply plead away the plain definition of a word in order to defeat a motion to dismiss.

### b. Chen Cannot Demonstrate A Reasonable Expectation of Compensation Because MLB Provided Him With Swag.

Groping for something to label "compensation" as to which he had an "expectation," Chen claims that he and the other volunteers at All-Star Week rendered services "in exchange for" "valuable in-kind benefits," such as a free t-shirt, cap, drawstring bag, water bottle, baseball, and free admission to All-Star FanFest or the All-Star Game. (PA-25, ¶100-101; SA-6.)

Chen cannot rely on the free "swag" to establish an expectation of compensation because those items are not wages or wage equivalents under the law. As discussed above, the expectation of "compensation" to which the statutes and the case law refer is an expectation of *wages* or "wages in another form" that equate to the sort of compensation that characterizes an employment relationship. *Alamo*, 471 U.S. at 301 n.23. Not every bit of benefit qualifies as "compensation" for this purpose. The analysis is aimed at answering the question about the "economic reality," largely meaning the economic dependence (or not) of the individual on the employer, whether for traditional wages or for the basic necessities of life that the Court found sufficient to be considered "wages in another form" in *Alamo* – food, shelter, clothing, transportation, and medical benefits received by economically dependent individuals. 471 U.S. at 293; *see also* PA-25, ¶ 105 (allegation of the Complaint conceding that Chen and the proposed class members "were not provided rehabilitation, food, clothing, or shelter").

The "economic reality" here is plain, as hard as Chen tries to reshape it: he volunteered for a few hours at a baseball carnival for his own enjoyment. He received free admission to All-Star FanFest and a small package of goodies. He was not economically dependent on the time spent at All-Star FanFest, not remotely so. He does not allege that he was coerced – whether by MLB, or by his economic circumstances, or anything else – to raise his hand and volunteer, and he concedes that he understood exactly what was offered. Like the minor items in *Hallissey*, and dramatically unlike the food and shelter of *Alamo*, a t-shirt and

baseball simply are not "wages in another form," 471 U.S. at 293, and Chen "went into the arrangement with eyes wide open." *Tasini*, 851 F. Supp. 2d at 740-41.

So deficient is Chen's position on this point that he cannot even argue it consistently. Even as he urged the district court to find that the things MLB gave him were "compensation" that he expected, he simultaneously argued that those items cannot count toward satisfaction of a minimum wage obligation. Chen tries to have it both ways: he claims that the tickets, shirt, and other items count as "wages" for purposes of determining whether he was a volunteer or an employee, and simultaneously argues that those items do not count as "wages" in evaluating whether he received the minimum wage. Either way, his claim fails.

### 3. Chen Does Not State A Viable Claim Regarding "Green Team" Volunteers.

Along with the boilerplate allegations of expected compensation for All-Star FanFest volunteers, the Complaint also alleges that a second set of volunteers – the "Green Team" volunteers, who collected trash at individual ballparks – rendered services "in exchange" for "valuable in-kind benefits." (PA-11, ¶¶ 7, 8; PA-25, ¶¶ 100-101; PA-32, ¶ 140.) In the case of the Green Team volunteers, the "swag" that they received included free admission to the games at which they volunteered and a T-shirt. *Id.*

The Court need not consider these allegations, because Chen himself never volunteered for the Green Team. His own claim fails, for the reasons stated above, and there is, accordingly, no basis to consider the claims of these other individuals. *See supra* II.A. at n.16.

Even if they were properly considered, Chen's allegations regarding the Green Team fail for the same reasons stated above. Specifically, to the detriment of his claim, Chen cannot demonstrate that these volunteers had an objectively reasonable expectation of wages or "wages in another form." Moreover, the Green Team volunteers – just like the All-Star FanFest volunteers – did not bear the hallmarks of an employment relationship with MLB. They spent even less time than the FanFest and other All-Star Week volunteers, participating for the length of a single baseball game during a few World Series games over the course of, at most, ten days. Thus, the parties had no relationship of any meaningful length nor any reasonable expectation of one. In this regard, the facts are similar to *Portland Terminal*, in which "the training course lasted a little over a week." *Cf. Alamo*, 471 U.S. at 301 (finding an employment relationship because plaintiffs were "entirely dependent upon the Foundation for long periods, in some cases several years").

\* \* \*

Under *Portland Terminal*, *Alamo*, and their progeny, Chen was not an employee under the FLSA as a matter of law. Just as the plaintiffs in *Tasini* got what they expected (*i.e.*, exposure in The Huffington Post), Chen too got what he expected – the opportunity to participate in a unique baseball experience. *See Tasini*, 851 F. Supp. 2d at 740. His claim therefore fails on this ground as well, independently of the seasonal exemption. His FLSA claims were properly dismissed, for both reasons.

## CONCLUSION

For all of the foregoing reasons, the Court should affirm the district court's decision.

Respectfully submitted,

MAJOR LEAGUE BASEBALL PROPERTIES, INC.
THE OFFICE OF THE COMMISSIONER OF
        BASEBALL, D/B/A MAJOR LEAGUE
        BASEBALL

By their attorneys,

Dated:  November 5, 2014

/s/ *Elise M. Bloom*

Elise M. Bloom
Mark D. Harris
Patrick J. Lamparello
Joshua S. Fox
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
(212) 969-3000
ebloom@proskauer.com

Mark W. Batten
Laura E. Deck
PROSKAUER ROSE LLP
One International Place
Boston, MA 02110
(617) 526-9600
mbatten@proskauer.com

*Attorneys for Defendants-Appellees*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

1. This brief contains 10,791 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a 14-point proportionally spaced typeface.

Dated: November 5, 2014

/s/ *Elise M. Bloom*
Elise M. Bloom
Mark D. Harris
Patrick J. Lamparello
Joshua S. Fox
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
(212) 969-3000
ebloom@proskauer.com


Mark W. Batten
Laura E. Deck
PROSKAUER ROSE LLP
One International Place
Boston, MA 02110
(617) 526-9600
mbatten@proskauer.com

*Attorneys for Defendants-Appellees*

# CERTIFICATE OF SERVICE

The undersigned certifies that on November 5, 2014, she caused the foregoing Brief of Defendants-Appellees to be filed electronically with the Court using the Case Management/ Electronic Case Filing system, which will automatically serve notice of same upon all counsel of record.


/s/ *Elise M. Bloom*