# No. 14-1315-cv

## In the United States Court of Appeals for the Second Circuit

---

JOHN CHEN, on behalf of himself and all others similarly situated,

*Plaintiff-Appellant,*

v.

MAJOR LEAGUE BASEBALL PROPERTIES, INC., THE OFFICE OF THE COMMISSIONER OF BASEBALL, DBA MAJOR LEAGUE BASEBALL,

*Defendants-Appellees,*

MAJOR LEAGUE BASEBALL, MAJOR LEAGUE BASEBALL ENTERPRISES, INC.,

*Defendants.*

---

On Appeal from the United States District Court
for the Southern District of New York
Case No. 13-cv-5494 (The Honorable John G. Koeltl)

---

## CORRECTED REPLY BRIEF FOR
## PLAINTIFF-APPELLANT JOHN CHEN

---

Justin M. Swartz
Juno Turner
Michael N. Litrownik
Outten & Golden LLP
3 Park Avenue, 29th Floor
New York, NY 10016
(212) 245-1000

Deepak Gupta
Jonathan E. Taylor
GUPTA BECK PLLC
1735 20th Street, NW
Washington, DC 20009
(202) 888-1741

*Counsel for Plaintiff-Appellant*

# TABLE OF CONTENTS

Table of Authorities ................................................................. ii

I.    Whether FanFest constitutes a separate "establishment" under the
      FLSA cannot be determined based solely on its physical location, and
      thus cannot be decided on the pleadings alone. .............................................. 4

      A.    Physical location is not the only factor bearing on whether two
            entities constitute a single establishment under the FLSA. ................. 4

      B.    Because an "establishment" cannot be determined by physical
            location alone, the seasonal exemption cannot be resolved on
            the bare pleadings in this case. ........................................................... 11

II.   Major League Baseball's proposed exemption for volunteers at for-
      profit entities is foreclosed by the FLSA's text, the Supreme Court's
      decision in *Alamo*, and longstanding Labor Department guidance, and
      provides no basis for dismissal on the pleadings in any event. ..................... 14

      A.    The FLSA's text—including express exemptions for volunteers
            at "public" and "non-profit" entities—forecloses a broader
            implied exemption. ............................................................................... 15

      B.    The Supreme Court's decision in *Alamo* rejected a broad
            "volunteer" exception to FLSA coverage. ........................................... 18

      C.    Under the Department of Labor's consistent and considered
            interpretation of the FLSA, there is no "volunteer" exception
            for for-profit businesses. ..................................................................... 22

      D.    Because the district court did not decide Major League
            Baseball's fact-bound defense, it should be left to the district
            court on remand. ................................................................................... 26

Conclusion .............................................................................................................. 29

# TABLE OF AUTHORITIES

## Cases

*Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*,
　469 F. Supp. 2d 1086 (M.D. Fla. 2006) ............................................................ 5, 8

*American Federal Group, Ltd. v. Rothenberg*,
　136 F.3d 897 (2d Cir. 1998) ................................................................... 26

*Andrus v. Glover Const. Co.*,
　446 U.S. 608 (1980) ................................................................... 17

*Archuleta v. Wal-Mart Stores, Inc.*,
　543 F.3d 1226 (10th Cir. 2008) ................................................................... 12, 13

*Arnold v. Ben Kanowsky, Inc.*,
　361 U.S. 388 (1960) ................................................................... 13

*Atkins v. Capri Training*,
　2014 WL 4930906 (D.N.J. 2014) ................................................................... 28

*Barfield v. New York City Health & Hospitals Corp.*,
　537 F.3d 132 (2d Cir. 2008) ................................................................... 24

*Bechhoefer v. United States Department of Justice D.E.A.*,
　209 F.3d 57 (2d Cir. 2000) ................................................................... 26

*Brennan v. Goose Creek Consolidated Independent School District*,
　519 F.2d 53 (5th Cir. 1975) ................................................................... 11

*Brooklyn Savings Bank v. O'Neil*,
　324 U.S. 697 (1945) ................................................................... 18

*Carter v. Dutchess Community College*,
　735 F.2d 8 (2d Cir. 1984) ................................................................... 27

*Chessin v. Keystone Resort Management, Inc.*,
　184 F.3d 1188 (10th Cir. 1999) ................................................................... 9

*Cleveland v. City of Elmendorf*,
　388 F.3d 522 (5th Cir. 2004) ................................................................... 28

*D'Alema v. Appalachain Heritage Communities, Inc.*,
  1991 WL 93086 (N.D. Ga. 1991) ................................................................ 2, 14

*Dejesus v. HF Managment Services, LLC*,
  726 F.3d 85 (2d Cir. 2013) ........................................................................ 15

*Doe v. Butler Amusements, Inc.*,
  --- F. Supp. 3d ---, 2014 WL 5465599 (N.D. Cal. Oct. 27, 2014) ......... 2, 7, 8, 10

*Gonzalez v. Justices of Municipal Court of Boston*,
  420 F.3d 5 (1st Cir. 2006) ......................................................................... 25

*Hallisey v. American Online*,
  2006 U.S. Dist. LEXIS 12964 (S.D.N.Y. 2006) ...................................... 21, 28

*Hardy v. New York City Health & Hospitals Corp.*,
  164 F.3d 789 (2d Cir. 2009) ...................................................................... 17

*Hillman v. Maretta*,
  133 S. Ct. 1943 (2013) ............................................................................... 17

*Kungys v. United States*,
  485 U.S. 759 (1988) ................................................................................... 17

*Levin v. Miller*,
  763 F.3d 667 (7th Cir. 2014) ..................................................................... 13

*Loftness Specialized Farm Equipment, Inc. v. Twiestmeyer*,
  742 F.3d 845 (8th Cir. 2014) ..................................................................... 26

*Marshall v. New Hampshire Jockey Club, Inc.*,
  562 F.2d 1323 (1st Cir. 1977) ............................................................*passim*

*McLaughlin v. Boston Harbor Cruise Lines, Inc.*,
  419 F.3d 47 (1st Cir. 2005) ....................................................................... 12

*Morrison v. International Programs Consortium*,
  253 F.3d 5 (D.C. Cir. 2001) ...................................................................... 28

*Nationwide Mutual Insurance Co. v. Darden*,
  503 U.S. 318 (1992) ................................................................................... 15

iii

*Okoro v. Pyramid 4 Aegis,*
 2012 WL 1410025 (E.D. Wis. 2012) ............................................. 23, 28

*Rodgers v. Schenkel,*
 162 F.2d 596 (2d Cir. 1947) ......................................................... 25, 28

*Roman v. Maietta Construction Inc.,*
 147 F.3d 71 (1st Cir. 1998) ................................................................. 28

*Tasini v. AOL,*
 851 F. Supp. 2d 734 (S.D.N.Y. 2012) ................................................. 22

*The Emily & The Caroline,*
 22 U.S. (9 Wheat) 381 (1824) .............................................................. 18

*Tony & Susan Alamo Foundation v. Secretary of Labor,*
 471 U.S. 290 (1984) ....................................................................*passim*

*TRW Inc. v. Andrews,*
 534 U.S. 19 (2001) ................................................................................ 17

*United States v. Butler,*
 297 U.S. 1 (1936) .................................................................................. 18

*Walling v. Portland Terminal Co.,*
 330 U.S. 148 (1947) ................................................................ 3, 24, 25, 28

*Wang v. Hearst Corp.,*
 293 F.R.D. 489 (S.D.N.Y. 2013) ....................................................... 28

*Youngblood v. West Virginia,*
 547 U.S. 867 (2006) ............................................................................. 25

*Zheng v. Liberty Apparel Co.,*
 355 F.3d 61 (2d Cir. 2003) .................................................... 4, 15, 27

## Legislative Materials

29 U.S.C. § 203(d) ................................................................................ 15

29 U.S.C. § 203(e) ................................................................... 3, 15, 16

29 U.S.C. § 213(a)(3) ............................................................................. 4

iv

## Regulatory Materials

29 C.F.R. § 553.101(a) ................................................................ 16

29 C.F.R. § 779.305 ...................................................................... 5

29 C.F.R. § 1620.9 ...................................................................... 10

Dept. of Labor, "Fact Sheet #71: Internship Programs Under the Fair
   Labor Standards Act" ........................................................... 24

Dept. of Labor, Fair Labor Standards Act Advisor, "Volunteers" ......................... 23

Dept. of Labor, Opinion Letter, 1999 WL 1788145 (Aug. 19, 1999) .................. 22

Dept. of Labor, Opinion Letter, 2002 WL 32406599 (Oct. 2, 2002) ................. 3, 23

Dept. of Labor, Wage & Hour Div., Field Operations Handbook
   (1993) ................................................................................ 24

*The Equal Pay Act; Interpretations*, 51 Fed. Reg. 29816 (Aug. 20, 1986) ............... 10, 11

# INTRODUCTION

The central issue in this appeal is whether Major League Baseball has proved—plainly and unmistakably, at the pleadings stage—that the Fair Labor Standards Act's seasonal exemption applies to each promotional event that it hosts during All-Star week and staffs with unpaid workers, including unpaid garbage collectors dubbed the "Green Team." The League makes just one argument for why it believes it has met that high burden: that its "FanFest" event was a separate business "establishment" because it was held in a separate physical location (a convention center less than two miles from MLB headquarters), and "physical separation is the sole determinant in defining the appropriate 'establishment.'" MLB Br. 20. If Major League Baseball is right about that last part, then it may force its employees to work at events like FanFest without having to comply with basic federal employment law. But if its physical-location-only theory is wrong— that is, if *any other factor* is relevant to the "establishment" inquiry—then it cannot carry its burden at this stage, and the district court's decision must be reversed.

Tellingly, Major League Baseball does not cite a single case in which a court granted a motion to dismiss based on a physical-location-only theory, and in fact conceded below that no such case exists. Hearing Tr. 19. It is not hard to see why: The theory runs counter to the Department of Labor's own test for applying the seasonal exemption, which is functional and fact-sensitive. The theory is also

1

unworkable and would lead to absurd results. It squarely conflicts with the most recent case interpreting the exemption. It cannot be reconciled with the case law from the circuits. It is inconsistent with the EEOC's functional interpretation of the same word in the same statute. And it disregards the Department of Labor's view that a temporary "convention" is not an exempt establishment of its own.

At bottom, the core problem for Major League Baseball is that its proposed theory is particularly inapt in the context of the seasonal exemption. As the First Circuit has recognized, it is "doubt[ful] that physical separation is as key a factor in applying an exemption based on seasonality as it may be in other situations." *Marshall v. N.H. Jockey Club, Inc.*, 562 F.2d 1323, 1331 (1st Cir. 1977). So courts must "look more broadly" to ascertain "the degree of actual economic independence"—a "critical," fact-intensive inquiry that cannot be determined on the pleadings. *Id.* at 1331–32. If "the factual record is not fully developed on this question," then even "summary judgment on this issue [is] inappropriate." *Doe v. Butler Amusements, Inc.*, --- F. Supp. 3d ---, 2014 WL 5465599, *10–11 (N.D. Cal. Oct. 27, 2014). Because "courts do not rely solely on physical location in determining whether a business is an establishment" but instead use "a fact-specific inquiry"—and because "no discovery has yet occurred in this case"—this Court should reverse the district court's decision. *D'Alema v. Appalachain Heritage Cmtys., Inc.*, 1991 WL 93086, *2-3 (N.D. Ga. 1991).

This Court should also decline the invitation to affirm on the alternative ground that the FLSA contains a categorical exemption for volunteers who perform work for for-profit businesses. That theory can't be squared with the FLSA's express exemptions for those who "volunteer" with *public* entities or *non-profit* food banks. 29 U.S.C. §§ 203(e)(4)(A), 203(e)(5). A broad exemption would render these narrow exemptions superfluous, and erase Congress's deliberate policy choice.

Nor can a broad exception be reconciled with the Supreme Court's only decision on point, which held that employers may *not* accept free labor, even from workers who insist on working for free, because the FLSA's purposes would be undermined "[i]f an exception to the Act were carved out for employees willing to testify that they performed work voluntarily." *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 299 (1984) ("*Alamo*"). Such an exception "would be likely to exert a general downward pressure on wages in competing businesses." *Id.*

And, as the League conceded below, such an exception is directly at odds with the Labor Department's longstanding position that there is no volunteer exception for for-profit entities. *See*, *e.g.*, Opinion Letter, 2002 WL 32406599 (Oct. 2, 2002). The narrow exception for unpaid trainees, under *Walling v. Portland Terminal Co.*, 330 U.S. 148 (1947), is also plainly inapplicable because there is no educational benefit to performing manual labor at promotional events.

3

In any event, because the proposed exception, on its own terms, would require a "fact-intensive" inquiry into the "totality of the circumstances," it cannot be examined "in the first instance on appeal," nor can it be resolved on the pleadings. *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 76-77 & n.14 (2d Cir. 2003). Indeed, Major League Baseball cites no case, from any court, from any point in the FLSA's 75-year history, that dismisses a case on the pleadings based on its "volunteer" theory, and it conceded below that no such case exists. This case should not become the first.

## ARGUMENT

**I. Whether FanFest constitutes a separate "establishment" under the FLSA cannot be determined based solely on its physical location, and thus cannot be decided on the pleadings alone.**

### A. Physical location is not the only factor bearing on whether two entities constitute a single establishment under the FLSA.

We explained in our opening brief (at 30) that the Department of Labor has eschewed a rigid physical-location-only test in favor of a functional, fact-sensitive approach in determining what constitutes an "establishment" under the FLSA, 29 U.S.C. § 213(a)(3). Under that approach, the agency requires not just physical separation, but *functional* separation as well: The entity must be "a separate unit with separate records and separate bookkeeping," and must have its own paid

employees, to make sure that it really operates as its own business unit and should be treated as such under the FLSA. 29 C.F.R. § 779.305.

Major League Baseball does not deny the Department's functional approach or explain how its position in this case is consistent with it. Instead, it contends that the functional test is inapplicable here because the particular regulation (section 779.305) addresses only "the unique situation of 'separate establishments on the same premises.'" MLB Br. 20. But that misses the point: The regulation interprets the *same definition* in the *same statute* and answers the *same ultimate question*—"whether two businesses constitute a single establishment or separate establishments under the FLSA." *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 469 F. Supp. 2d 1086, 1090 (M.D. Fla. 2006). So why would the inquiry be different here? Why would it be functional and fact-sensitive in one context, but wooden and mechanical in another? Put more pointedly, why would the Department consider (indeed, *require*) factors other than physical separation when two businesses happen to be located on the same premises, but focus single-mindedly on physical separation when they are not? Major League Baseball does not say. It provides no reason whatsoever why the Department would draw such a strange and inflexible line, nor cite any authority even attempting to do so.

That is hardly surprising—particularly in the context of the seasonal exemption. As the First Circuit has explained, it is "doubt[ful] that physical

5

separation is as key a factor in applying an exemption based on seasonality as it may be in other situations," and it certainly can't be the *only* factor. *Marshall*, 562 F.2d at 1331. "The more important consideration in terms of this particular exemption," the court reasoned, is "the degree of actual economic independence of the two business units." *Id.* at 1332. The court found that this factor—much "more than physical separation"—is "*critical* in applying the [seasonal] exemption." *Id.* at 1331 (emphasis added).

It did so for good reason. To see why, imagine a contrary rule in which physical location was the end-all and be-all in determining an "establishment" for purposes of the seasonal exemption. If that were the rule, the absurdities would be endless. Recall a few from our opening brief (at 32): If Major League Baseball had held FanFest in a large convention hall on the first floor of its headquarters on Park Avenue, the Department's multi-prong, functional test would apply. Why should it be any different if the League instead holds the event at a convention center down the street? And what about its other promotional activities and functions? On Major League Baseball's view, "FanFest and the remainder of the All-Star Week events, as well as each World Series stadium hosting games of each World Series," each constitutes its own separate exempt "establishment." Dist. Ct. Dkt. 36, at 19. But why stop there? What about every activity or function that Major League Baseball hosts in a temporary space? What about traveling Broadway shows that

6

switch venues every few months but run for years? Or musical bands that tour the country? Do they all automatically become new "establishments" whenever they move places, regardless of other considerations? Although Major League Baseball dodges these questions, it has no choice but to answer yes.

That answer squarely conflicts with the most recent case to consider this issue, decided more than a week before Major League Baseball filed its brief here. *See Doe v. Butler Amusements, Inc.*, --- F. Supp. 3d ---, 2014 WL 5465599 (N.D. Cal. Oct. 27, 2014). That case involved a "traveling carnival" company that operates a series of carnivals at various "temporary locations," each of which is "separated by many miles, and in some cases, hundreds of miles," and each of which lasts for an average of only "9–10 days." *Id.* at *1–2. After maintenance workers (Mexican nationals on work visas) sued the carnival company for failing to pay them a minimum wage, the company moved for summary judgment. *Id.* at *3–4. It took the position that it didn't have to pay the workers a living wage because "each discrete event or carnival it operates" is its own exempt seasonal "establishment"— the same position Major League Baseball takes here. *Id.* at *9.

The court rejected that position and denied the motion. It found that it did "not have sufficient evidence" to decide "whether the individual carnivals should be found to be the relevant establishments"—despite their physical distinctness— and that "factual questions remain" "relating to the functioning" of the carnivals as

7

separate business units. *Id.* at *10–11. Because "the factual record [was] not fully developed on this question," the court held that "summary judgment on this issue [was] inappropriate" and thus "decline[d] to decide it at this stage of the case." *Id.* at *11. Major League Baseball's location-only theory cannot be reconciled with this decision.

Nor can it be reconciled with the decisions of the circuit courts, which take a functional approach akin to the Department of Labor's. As one circuit has held, the Department's "three-requirement definition of an establishment" (*i.e.*, its functional approach) "may be borrowed to define establishment for purposes of other exemptions" and other contexts. *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1158–60 (11th Cir. 2008) (holding that two businesses "were not separate establishments" because they "intermingled funds and in many aspects of management functioned as a single unit"). And the First Circuit, in *New Hampshire Jockey Club* (discussed above), explained the need for courts "to proceed beyond the regulation and look more broadly into 'the integrity of the economic … and functional separation between the business units'" to determine whether two units are truly separate establishments for purposes of the seasonal exemption. 562 F.2d at 1331. On this question, the First Circuit elaborated, "physical separation" is not a particularly important factor; "[t]he more important consideration" is "the

degree of actual economic independence of the two business units," which is "critical in applying the [seasonal] exemption." *Id.* at 1331−32.

Major League Baseball attempts to distinguish the First Circuit case on its facts, dismissing it as irrelevant because it "concerned two businesses on the same premises." MLB Br. 22. And indeed it did. But be that as it may, there can be no doubt that Major League Baseball's position in this case—that physical separation is dispositive in determining whether FanFest is a separate establishment—is entirely at war with the First Circuit's reasoning in that case.[1]

Major League Baseball's physical-location-only theory is also inconsistent with the Department of Labor's guidance that an amusement or recreation "convention is not considered an exempt establishment." DOL Handbook § 25j05. That view reflects the agency's position that physical location is not the only factor in determining what constitutes an "establishment" under the recreational exemption. A convention like FanFest is typically held in a temporary location and does not have an enduring physical presence, and is often staffed by the hosting

---

[1] To support its physical-location-only theory, Major League Baseball (at 21) relies principally on *Chessin v. Keystone Resort Management, Inc.*, 184 F.3d 1188 (10th Cir. 1999). But that case stands for no such thing. Although the court concluded that "issues of business integration are not dispositive in determining whether establishments are separate," it did not hold that they are *irrelevant. Id.* at 1192. To the contrary, the court reviewed the evidence at summary judgment and determined that two ski resorts miles apart "constitute separate establishments for the purposes of" an exemption for recreational establishments located in national parks. *Id.* at 1192−93.

9

organization, making it insufficiently separate in functional and economic terms to constitute its own establishment—even though it is held in a distinct physical space.

Finally, Major League Baseball's argument cannot be squared with an EEOC regulation interpreting the term "establishment" in the Equal Pay Act, "which is part of the FLSA." *Butler Amusements, Inc.*, 2014 WL 5465599, at *7; *see* 29 C.F.R. § 1620.9. That regulation applies the term's "well settled meaning" under the FLSA. *Id.* Drawing on the Department of Labor's approach, "which allow[s] a measure of flexibility whenever called for by the facts of a given case," the EEOC regulation "acknowledges that certain factual situations may call for a restricted use of the term while others may call for an expanded use." *The Equal Pay Act; Interpretations*, 51 Fed. Reg. 29816, 29817 (Aug. 20, 1986). Thus, just as the Department recognizes that "two or more portions of a business enterprise, even though located in a single physical place of business, may constitute more than one establishment," the EEOC recognizes that, "[c]onversely," certain circumstances "may call for two or more distinct physical portions of a business enterprise being treated as a single establishment." 29 C.F.R. § 1620.9. And whether that is so depends on the facts of a given case, including whether "a central administrative unit" makes hiring decisions and "assign[s] the location of employment"; whether employees "frequently interchange work locations"; and whether "daily duties [are] virtually identical and performed under similar working conditions." *Id.*

10

This non-exclusive list is taken primarily from *Brennan v. Goose Creek Consolidated Independent School District*, 519 F.2d 53, 56 (5th Cir. 1975), which held that "there may be situations in which a single establishment could include operations at more than one physical location." The EEOC's regulation, which continues this "traditional meaning of the term establishment as it has evolved under the FLSA," likewise recognizes that "in certain circumstances more than one establishment may be contained in a single place of business or, two or more separate physical places of business may constitute a single establishment." 51 Fed. Reg. at 29817.

Although Major League Baseball acknowledges these authorities, it claims (at 24) that they "concern[] yet another distinguishable situation: where an employer assigns employees interchangeably to perform identical functions at different locations." That scenario, Major League Baseball asserts flatly, is different "from facts such as those presented here." But that just makes our point: What are those facts, exactly? The League cites no record evidence because there isn't any.

**B.     Because an "establishment" cannot be determined by physical location alone, the seasonal exemption cannot be resolved on the bare pleadings in this case.**

Once it is clear that physical separation alone is insufficient to definitively determine what constitutes an "establishment" under the seasonal exemption (and Major League Baseball all but concedes that it is), there can be little doubt that the

11

district court's decision must be reversed. Major League Baseball has the burden of proving the seasonal exemption—an affirmative defense to the FLSA action—"by 'clear and affirmative' evidence." *Archuleta v. Wal-Mart Stores, Inc.*, 543 F.3d 1226, 1233 (10th Cir. 2008). Dismissal under Rule 12(b)(6) is thus appropriate only if "it is crystal clear under established law" that the exemption applies. *McLaughlin v. Boston Harbor Cruise Lines, Inc.*, 419 F.3d 47, 52 (1st Cir. 2005). By contrast, if the Court has any doubt about whether "the application of the exemption" can be determined on the "bare bones pleadings" the Court "must remand the case for further fact-finding." *Id.*

As detailed in our opening brief (at 39–41), further fact-finding is particularly warranted here to answer a long list of unknowns, including the following: Did FanFest have its own corporate identity or business unit? Did it have its own payroll, recordkeeping, or bookkeeping systems? Did it have any paid workers of its own? How many paid Major League Baseball employees from headquarters worked at FanFest? (Because the exemption "turns on the nature of the employer's business, not on the nature of the employee's work," *N.H. Jockey Club*, 562 F.3d at 1331 n.4, if FanFest counts as a separate establishment, then the League can force its permanent employees to work at FanFest without pay.) Did the League treat those employees as also exempt from the FLSA or are they employed by a separate

establishment? If there were paid Major League Baseball employees at FanFest, what percentage of the workers were they?

Major League Baseball claims (at 31) that these questions are "wholly irrelevant" and there is "a broad factual record for early judicial assessment"— namely, Chen's complaint. But this argument is rooted entirely in its physical-location-only theory. *See* MLB Br. 31. Once that goes by the wayside, the League is left with a last-ditch attempt to shift the burden: It complains that "Chen has not … point[ed] to *any* authority for his argument that the allegations in his Complaint would support a departure from the rule that physically distinct locations are separate 'establishments.'" *Id.* at 26. That gets things backwards. The *employer* bears the burden of proving that the exemption "plainly and unmistakably" applies, *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960), and must do so with "clear and affirmative evidence," *Archuleta*, 543 F.3d at 1233. Chen does not have to *dis*prove an exemption at the pleadings stage. Indeed, "complaints need not anticipate affirmative defenses" at all. *Levin v. Miller*, 763 F.3d 667, 671 (7th Cir. 2014).

Because "courts do not rely solely on physical location in determining whether a business is an establishment" and instead engage in "a fact-specific inquiry"—and because "no discovery has yet occurred in this case"—this Court should reverse the district court's decision dismissing this case on the pleadings.

13

*D'Alema v. Appalachain Heritage Cmtys, Inc.*, No. 1:90–CV2238RRH, 1991 WL 93086, *2-3 (N.D. Ga. 1991).

## II. Major League Baseball's proposed exemption for volunteers at for-profit entities is foreclosed by the FLSA's text, the Supreme Court's decision in *Alamo*, and longstanding Labor Department guidance, and provides no basis for dismissal on the pleadings in any event.

Major League Baseball also seeks affirmance on an independent theory that the district court did not reach: that Chen and others like him do not enjoy the FLSA's protections because, as a matter of law, they were not employees but rather exempt "volunteers" who had "no reasonable expectation of receiving wages." MLB Br. 35. We are told that this theory is supported by "decades of settled law" and that "the record demonstrates" (both "amply" and "plain[ly]") that, under "the totality of the circumstances," Chen was not an employee. *Id.* at 34, 38, 42.

In fact, no relevant legal authority supports Major League Baseball's novel theory. Both the Supreme Court and the Department of Labor have expressly rejected it, and the FLSA's text forecloses it. The League cannot cite a single case—from any jurisdiction, from any point in the FLSA's 75-year history—in which a court has dismissed a case based on its theory. And because there is no "record" in this case at all, the fact-intensive question of employment under the FLSA should be left to the district court to decide in the first instance, after discovery.

14

A. **The FLSA's text—including express exemptions for volunteers at "public" and "non-profit" entities—forecloses a broader implied exemption.**

The FLSA's definition of "employee" has been recognized, since its enactment, as the "broadest definition that has ever been included in any one act." *U.S. v. Rosenwasser*, 323 U.S. 360, 363 n.3 (1945). Congress defined the term "employee" with "striking breadth" to extend its protections to "many persons and working relationships" that were not previously protected by any labor law and to expand its coverage beyond traditional or common-law concepts of employment. *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 91 (2d Cir. 2013).

Thus, an "employee" is "any individual employed by an employer." 29 U.S.C. § 203(e)(1). An "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee[.]" 29 U.S.C. § 203(d). And to "employ" includes "to suffer or permit to work." 29 U.S.C. § 203(g); *see Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992) (noting that the "suffer or permit to work" formulation "stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles"). As this Court has explained, an employer "'suffers or permits' an individual to work if, as a matter of 'economic reality,' the entity functions as the individual's employer." *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 66 (2d Cir. 2003) (citation omitted).

15

In this case, however, Major League Baseball seeks to sidestep that well settled factual inquiry into "economic reality" by invoking a claimed legal exception for "volunteers." Fatal to this proposed volunteer exception, however, is the text of the FLSA itself: Congress created two narrowly circumscribed FLSA exemptions for "volunteers," and it deliberately chose not to extend those exceptions to private for-profit businesses.

Both exemptions turn on the nature of the entity for whom an individual volunteers. First, Congress provided that "[t]he term 'employee' does not include any individual who volunteers to perform services *for a public agency*." 29 U.S.C. § 203(e)(4)(A) (emphasis added). A Department of Labor regulation defines such a "volunteer" as an "individual who performs hours of service for a public agency *for civic, charitable, or humanitarian reasons*, without promise, expectation or receipt of compensation for services rendered." 29 C.F.R. § 553.101(a) (emphasis added). Second, Congress created an exception for "individuals who volunteer their services *solely for humanitarian purposes* to private *non-profit* food banks and who receive from the food banks groceries." 29 U.S.C. § 203(e)(5) (emphasis added). Congress took care to exempt only volunteers at "non-profit" food banks, specifically ensuring that for-profit entities could not seek to come within the exception. Because Major League Baseball is a private, for-profit business rather than a non-profit or public entity, and because Chen performed his work in

16

exchange for in-kind benefits rather than solely for "civic, charitable, or humanitarian reasons," neither Chen nor those in his shoes fell within the FLSA's express volunteer exceptions.

Major League Baseball's proposed exception thus falls victim to a basic rule of statutory construction: "Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied." *Hillman v. Maretta*, 133 S. Ct. 1943, 1953 (2013) (quoting *Andrus v. Glover Const. Co.*, 446 U.S. 608, 616–17 (1980)). Put differently, "the most natural reading" is that "Congress implicitly excluded" the sort of broad volunteer exception that the League proposes "by explicitly including a more limited one." *TRW Inc. v. Andrews*, 534 U.S. 19, 28 (2001). This is a special application of "the familiar principle of *expressio unius est exclusio alterius*, the mention of one thing implies the exclusion of the other." *Hardy v. N.Y.C. Health & Hosps. Corp.*, 164 F.3d 789, 794 (2d Cir. 2009).

If the League's reading of the statute were adopted—that is, if there really were a categorical exception for any "volunteers" who lack a "reasonable expectation of wages," even if they perform productive work for the benefit of a for-profit enterprise—then the narrow volunteer exceptions Congress created would be rendered superfluous. This would violate the "cardinal rule of statutory interpretation that no provision should be construed to be entirely redundant." *Kungys v. United States*, 485 U.S. 759, 778 (1988); *see United States v. Butler*, 297 U.S. 1,

17

65 (1936) ("These words cannot be meaningless, else they would not have been used."). Worse still, Congress's careful policy choice to limit the volunteer exceptions to public and non-profit entities, and to work performed for civic or humanitarian reasons, would be erased, making "evasion of the law ... almost certain." *The Emily & The Caroline*, 22 U.S. (9 Wheat) 381, 390 (1824). If a multi-billion-dollar sports and marketing conglomerate can hire people to pick up the trash and escape FLSA coverage altogether simply by calling these workers "volunteers," what good are Congress's express limitations?

### B. The Supreme Court's decision in *Alamo* rejected a broad "volunteer" exception to FLSA coverage.

Even if Congress had not spoken so clearly through its carefully limited volunteer exceptions, a broad volunteer exception could not be squared with the FLSA's design as interpreted by the Supreme Court. Because a fundamental purpose of the Act was to prevent covered employers from gaining an unfair competitive advantage through the payment of substandard wages, the Court has held that individuals may not choose to decline or waive their statutory entitlements under the FLSA by characterizing the activities they perform for a covered employer as "volunteer." *See Alamo*, 471 U.S. at 299; *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945). Major League Baseball's proposed exception seeks to upend that longstanding rule.

18

In its only decision directly addressing the status of volunteers under the FLSA, the Supreme Court held that volunteers at a not-for-profit religious foundation, who staffed the commercial businesses from which the organization derived most of its income, were "employees" entitled to minimum wages. *Alamo*, 471 U.S. at 299-302, 306. The Court reached this conclusion even though the workers insisted that they were volunteers and had no expectation of cash compensation. The foundation's "associates" were mostly drug addicts, derelicts, or criminals before their conversion and rehabilitation by the foundation. The foundation provided them with in-kind benefits, but no cash wages. One associate, for example, testified that she considered her work in the foundation's businesses to be part of her ministry and that she did not work for material rewards. *Id.* at 300. She testified that "no one ever expected any kind of compensation, and the thought is totally vexing to my soul." *Id.* at 300–01.

Nevertheless, the Supreme Court held that employers may not accept free labor from workers who insist on working for free because the FLSA's purposes "require that it be applied even to those who would decline its protections. If an exception to the Act were carved out for employees willing to testify that they performed work voluntarily, employers might be able to use superior bargaining power to coerce employees to make such assertions, or to waive their protections under the Act." *Id.* at 302. "Such exceptions to coverage," the Court emphasized,

19

"would affect many more people than those workers directly at issue in this case and would be likely to exert a general downward pressure on wages in competing businesses." *Id.*

*Alamo* dooms Major League Baseball's plea for a broad volunteer exception. The League's brief plucks language from the *Alamo* opinion out of context and tries to manufacture factual distinctions, but these efforts cannot withstand scrutiny. The Supreme Court did not hold that an "expectation of compensation" is a prerequisite to employee status. To the contrary, the Court emphasized that the Department of Labor had "failed to produce any past or present associate of the Foundation who viewed his work … as anything other than 'volunteering' his services to the Foundation." *Id.* at 300. The Court's central point was that, even though the associates "vehemently protest[ed] coverage under the Act," their willingness to work for free was not dispositive because creating an exception on that basis would lead to coercion, waiver, and downward pressures on wages across the relevant labor market. *Id.* at 302.

To be sure, the Court did emphasize "the District Court's finding that the associates must have expected to receive in-kind benefits—and expected them in exchange for their services," *id.* at 301, but the suggestion that such an expectation is necessary for employee status cuts against the Court's broader point that a worker's willingness to work for free cannot be enough to escape coverage. In any

20

event, even if an expectation of in-kind benefits were necessary, Chen explicitly alleges that he and his fellow workers *did* expect and receive in-kind compensation in the form of tickets to baseball events for themselves and their guests, as well as shirts, caps, backpacks, water bottles, and lanyards. A-10-11, 15-16, 23, 25, 34. His allegation that he or others performed this work in exchange for such in-kind compensation is entirely credible. After all, what rational person agrees to perform routine manual tasks for a multi-billion-dollar for-profit entity—from alphabetizing forms to picking up trash—in exchange for nothing?

Finally, *Alamo* deemed it "immaterial" that "the compensation was received primarily in the form of benefits rather than cash," and never suggested that the *type* of in-kind benefits were somehow relevant to whether the workers were in fact employees. 471 U.S. at 301. Nor do the cases on which the League relies support such fine-grained factual distinctions. To the contrary, in *Hallisey v. American Online*, 2006 U.S. Dist. LEXIS 12964, at *19 (S.D.N.Y. 2006), the court acknowledged that the none of the plaintiffs "were dependent on AOL for their needs such as food, clothing, and shelter," but concluded that "that is not the only way to generate an expectation of compensation. If that were the law, no employer of part-time employees or independently wealthy persons who chose to work would ever be bound by the FLSA." And *Tasini v. AOL*, 851 F. Supp. 2d 734, 740

(S.D.N.Y. 2012), the League's other case, did not involve state or federal labor laws so its relevance is limited to say the least.

### C. Under the Department of Labor's consistent and considered interpretation of the FLSA, there is no "volunteer" exception for for-profit businesses.

Major League Baseball conceded below that the Department of Labor disagrees with its volunteer-exception theory. *See* Hearing Tr. 14 (The Court: "The Department of Labor would disagree with you, right?" Counsel for Major League Baseball: "The Department of Labor would disagree with me, yes."). And its brief to this Court blithely dismisses the Department's view, in a footnote, as one that "ignores the case law, without comment or explanation." MLB Br. 38 n.18. Major League Baseball is entitled to express its disagreement with the Department of Labor, but it is not entitled to its own facts.

The facts are these. Following *Alamo*, the Department has taken a consistent position on this issue and has explained its reasoning in its regulations, opinion letters, fact sheets, and, most recently, in an amicus brief to this Court filed just a few months ago. "Under the FLSA, individuals may not volunteer services to private sector for profit employers. On the other hand, in the vast majority of circumstances, individuals can volunteer services to public sector employers." DOL Opinion Letter, 1999 WL 1788145, at *2 (Aug. 19, 1999); *see* DOL, Fair Labor Standards Act Advisor, "Volunteers," *available at*

http://www.dol.gov/elaws/esa/flsa/docs/volunteers.asp ("Individuals who volunteer or donate their services, usually on a part-time basis, for public service, religious or humanitarian objectives, not as employees and without contemplation of pay, are not considered employees of the religious, charitable or similar non-profit organizations. … Under the FLSA, employees may not volunteer services to for-profit private sector employers.").

In a 2002 Opinion Letter, the Department concluded that unpaid student volunteers who bagged groceries at private, for-profit grocery stores and carried the bags to customers' cars were employees under the FLSA despite their charitable purpose. 2002 WL 32406599 (Oct. 2, 2002). The Department based its conclusion on an extensive analysis of *Alamo,* concluding that the students were employees because they performed productive work for the benefit of a for-profit business. *Id.* at *3. The Department's reasoning echoed *Alamo*'s concern about the downward pressure on the labor market that would result from free labor for for-profit businesses. *Id.*; *see also Okoro v. Pyramid 4 Aegis*, 2012 WL 1410025, *7 (E.D. Wis. 2012) ("Among other reasons, employers who engage unpaid 'volunteers' gain an unfair competitive advantage from the payment of substandard wages, or as here, *no wages at all*." (emphasis added; discussing 2002 Opinion Letter)).

"[S]uch agency letters represent 'a body of experience and informed judgment to which courts and litigants may properly resort for guidance.'" *Barfield v.*

23

*New York City Health & Hosp. Corp.*, 537 F.3d 132, 149 (2d Cir. 2008) (quoting *Bragdon v. Abbott*, 524 U.S. 624, 642 (1998)). Thus, "this court has often relied on DOL Opinion Letters for their persuasive value." *Id.*

The Department has also explained in depth why the narrow exception for "trainees," under *Walling v. Portland Terminal Co.*, 330 U.S. 148 (1947), for which it has developed a demanding six-factor test, has no application in a case like this—in which a for-profit entity does not even purport to provide educational benefit or training to unpaid workers. As the Department explained in a recent amicus brief to this Court, "the FLSA does not permit individuals to volunteer their services to for-profit businesses unless they meet the trainee test." DOL Brief in *Glatt v. Fox Searchlight Pictures, Inc.*, No. 13-4478-cv, at 8 n.4 (citing DOL, "Fact Sheet #71: Internship Programs Under the Fair Labor Standards Act," *available at* http://www.dol.gov/whd/regs/compliance/whdfs71.pdf)*; see* Wage & Hour Div., Field Operations Handbook, Ch. 10, ¶10b11 (1993), *available at* http://www.dol.gov/whd/FOH/FOH_Ch10.pdf (listing six-factor trainee test).

The Department's view is fully consistent with *Portland Terminal*, which established a narrow exception to FLSA coverage for participants in a bona fide training program (in that case, a program for railroad brakemen). The Court relied on certain key facts as the basis for its holding. *First*, the trainees provided no "'immediate advantage'" to the railroads. 330 U.S. at 153. *Second*, the company

24

provided "the same kind of instruction" as a vocational school. *Id. Third*, the trainees worked "solely" for their own "personal purpose or pleasure" and thus were like students in school. *Id.* at 152. *Fourth*, the trainees did not displace regular employees but actually impeded their work. *Id.* at 149-50. Acknowledging the concern that a decision in favor of the railroads might "open up a way for evasion of the law," *id.* at 153, the Court emphasized the narrow scope of its ruling and "the unchallenged finding[]" that the railroads "receive[d] no 'immediate advantage' from any work done by the trainees." *Id.* (emphasis added).[2]

Both the Department's guidance and the *Portland Terminal* opinion hinge critically on the training aspect of the job. Had the workers in *Portland Terminal* obtained no training or educational benefits, like Chen, they would not have been "trainees" at all. It cannot be easier for a for-profit business to avoid paying non-interns over interns—that would render the Department's six-factor test a nullity—but that is precisely what Major League Baseball proposes here.[3]

---

[2] This Court's three-sentence decision in *Rodgers v. Schenkel*, 162 F.2d 596 (2d Cir. 1947), cannot bear the weight the League places on it. Rodgers merely reversed and remanded the case for further proceedings in light of *Portland Terminal*; the court offered no analysis of how the case should ultimately come out. In this respect, it is akin to a GVR ("grant, vacate, and remand") order of the Supreme Court—which "does not even carry precedential weight." *Gonzalez v. Justices of Mun. Court of Boston*, 420 F.3d 5, 7 (1st Cir. 2006); *see Youngblood v. West Virginia*, 547 U.S. 867, 872–73 (2006) (Scalia, J., dissenting).

[3] Two years before this case was filed, the law firm that represents Major League Baseball (one of the nation's most well-respected labor and employment (continued…)

### D. Because the district court did not decide Major League Baseball's fact-bound defense, it should be left to the district court on remand.

Finally, although this Court has the discretion to affirm on any basis supported by the record, the Court need not—and, in this case, should not—address Major League Baseball's volunteer-exception theory in the first instance. Because "the District Court did not rule" on this theory, the Court may "decline the [appellee's] invitation to affirm" on this basis, and remand for factfinding. *Bechhoefer v. U.S. Dep't of Justice D.E.A.*, 209 F.3d 57, 63 (2d Cir. 2000); *see Loftness Specialized Farm Equip., Inc. v. Twiestmeyer*, 742 F.3d 845, 851 (8th Cir. 2014). Such a remand is necessary where "affirmance on [an] alternative basis would require an improper incursion by this court into first-instance fact-finding." *Am. Fed. Grp., Ltd. v. Rothenberg*, 136 F.3d 897, 912 (2d Cir. 1998).

Even taken on its own terms, the League's theory turns on "the totality of the ... circumstances" and a close look at the facts. MLB Br. 34. In the context of FLSA employment status, this Court has held that the uniquely "fact-intensive" nature of the inquiry demands that it be left to the district court in the first instance.

firms) advised its clients and the public that, consistent with *Alamo* and the Department's guidance, "[u]nder no circumstance will an individual be deemed a 'volunteer' when providing services to private, for-profit employers." Proskauer Rose LLP, *June 2011 Employment Law Counseling & Training Newsletter*, *available at* http://www.nomoreunpaidlabor.com/documents/pdfs/employment-law-counseling-tip-of-the-month-june-2011.pdf. (Since the filing of this litigation, the original document has been modified on the law firm's website.)

*Zheng*, 355 F.3d at 77 n.14. "Because the process of isolating and then applying the relevant factors, even at the summary judgment stage, is closely akin to the District Court's fact-finding function under Fed. R. Civ. P. 52(a)," the Court has explained, "we do not think it is advisable" for the court of appeals to conduct the FLSA employment inquiry "in the first instance on appeal." *Id.; see also Carter v. Dutchess Cmty. College*, 735 F.2d 8, 12 (2d Cir. 1984) (requiring case-by-case analysis of employee status and finding error when a court granted summary judgment by placing "undue weight" on one factor).

The need for factual development on remand here is underscored by Major League Baseball's inability (conceded below) to cite even a single pleading-stage decision, from any jurisdiction, to support its argument. *See* Hearing Tr. at 9-10 (The Court: "Is there any case that has dismissed—again, a motion to dismiss—a person who is working for a for-profit corporation and the Court says, 'As a matter of law, you're a volunteer—other than a trainee situation—and you have no claim?'" Counsel for Major League Baseball: "There is no case that has dismissed it on a motion to dismiss."). This lack of authority should not be surprising because the only Supreme Court case on the FLSA status of volunteers—which held that willing volunteers *were* covered employees under the FLSA—emphasized the fact-intensive nature of the inquiry, noting for example that "the District Court's findings" were "sufficiently clear … that a remand [was] unnecessary." *Alamo*, 71

27

U.S. at 295 n.9. Similarly, *Portland Terminal*—which articulated the narrow FLSA exception for "trainees"—premised its holding on the findings: "Accepting the unchallenged findings here that the railroads receive no 'immediate advantage' from any work done by the trainees, we hold that they are not employees within the Act's meaning." 330 U.S. at 153. Given the Supreme Court's emphasis on these findings, it is no coincidence that *none* of the cases Major League Baseball cites to support its volunteer-exemption theory were decided on the pleadings; in fact, many were decided only after trial, and they all emphasize the fact-bound, totality-of-the-circumstances nature of the employment inquiry.[4]

Finally, a remand is appropriate because this Court will soon hear oral argument in two appeals on the FLSA status of unpaid interns at for-profit corporations. *See Glatt v. Fox Searchlight Pictures, Inc.*, No. 13-4478-cv(L); *Wang v. Hearst Corp.*, No. 13-4480-cv (both set for oral argument on January 30, 2015). Although the intern and volunteer issues are obviously quite different, the

---

[4] *See Cleveland v. City of Elmendorf*, 388 F.3d 522 (5th Cir. 2004) (summary judgment); *Morrison v. Int'l Programs Consortium*, 253 F.3d 5, 11-12 (D.C. Cir. 2001) (trial court erred in granting motion for judgment as a matter of law after close of evidence; question should have gone to the jury); *Roman v. Maietta Constr. Inc.*, 147 F.3d 71 (1st Cir. 1998) (findings following three days of hearings); *Rogers v. Schenkel*, 162 F.2d 596 (2d Cir 1947) (trial and findings); *Hallissey*, 2006 U.S. Dist. LEXIS 12964 (denying summary judgment because "a more developed record is necessary"); *Wang v. Hearst Corp.*, 293 F.R.D. 489 (S.D.N.Y. 2013) (denying summary judgment given fact issues); *Okoro*, 2012 WL 1410025 (granting summary judgment to plaintiff); *Atkins v. Capri Training*, 2014 WL 4930906 (D.N.J. 2014) (summary judgment).

resolution of these appeals may provide additional guidance for the district court to apply in the first instance on remand.

## CONCLUSION

The district court's judgment should be reversed.

Respectfully submitted,

*/s/ Deepak Gupta*

Deepak Gupta
Jonathan E. Taylor
GUPTA BECK PLLC
1735 20th Street, NW
Washington, DC 20009
(202) 888-1741

Justin M. Swartz
Juno Turner
Michael N. Litrownik
OUTTEN & GOLDEN LLP
3 Park Avenue, 29th Floor
New York, NY 10016
(212) 245-1000

January 8, 2015          *Counsel for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7)

I hereby certify that my word processing program, Microsoft Word, counted 6,945 words in the foregoing brief, exclusive of the portions excluded by Rule 32(a)(7)(B)(iii).

*/s/ Deepak Gupta*
_____
Deepak Gupta

January 8, 2015

## CERTIFICATE OF SERVICE

I hereby certify that on January 8, 2015, I electronically filed the foregoing Corrected Reply Brief for Plaintiff-Appellant John Chen with the Clerk of the Court of the U.S. Court of Appeals for the Second Circuit by using the Appellate CM/ECF system. All participants are registered CM/ECF users, and will be served by the Appellate CM/ECF system.

*/s/ Deepak Gupta*
_____
Deepak Gupta