14-1315-cv
Chen v. Major League Baseball Properties, Inc. et al.

| | |
|---|---|
| 1 | UNITED STATES COURT OF APPEALS |
| 2 | FOR THE SECOND CIRCUIT |
| 3 | _____ |
| 4 | |
| 5 | August Term, 2014 |
| 6 | |
| 7 | (Argued: March 30, 2015    Decided: August 14 , 2015) |
| 8 | |
| 9 | Docket Nos. 14-1315-cv |
| 10 | |
| 11 | _____ |
| 12 | |
| 13 | JOHN CHEN, on behalf of himself and all others similarly situated, |
| 14 | |
| 15 | *Plaintiff-Appellant,* |
| 16 | |
| 17 | v. |
| 18 | |
| 19 | MAJOR LEAGUE BASEBALL PROPERTIES, INC., THE OFFICE OF THE |
| 20 | COMMISSIONER OF BASEBALL, dba Major League Baseball, |
| 21 | |
| 22 | *Defendants-Appellees,* |
| 23 | |
| 24 | MAJOR LEAGUE BASEBALL, MAJOR LEAGUE BASEBALL ENTERPRISES, |
| 25 | INC., |
| 26 | |
| 27 | *Defendants.* |
| 28 | |
| 29 | _____ |
| 30 | |

1    Before: POOLER and CARNEY, *Circuit Judges*, and GLEESON, *District Judge*.[1]

2           Plaintiff-Appellant John Chen appeals from the dismissal by the United

3    States District Court for the Southern District of New York (John G. Koeltl, *J.*) of

4    his putative collective action claims under the Fair Labor Standards Act. Chen

5    alleged, inter alia, violations of the minimum wage provisions of the Act arising

6    from his work as an unpaid volunteer at FanFest, a five-day "interactive baseball

7    theme park" organized in conjunction with Major League Baseball's 2013 All-Star

8    Week. We agree with the district court that (1) for purposes of the amusement or

9    recreational establishment exemption, 29 U.S.C. § 213(a)(3), the term

10   "establishment" means a distinct, physical place of business, and (2) the

11   exemption applies to FanFest.

12          Affirmed.

13                              _____

14                              DEEPAK GUPTA, Gupta Beck PLLC, Washington, DC,
15                              (Jonathan E. Taylor, Gupta Beck PLLC; Justin M.
16                              Swartz, Juno Turner, Michael N. Litrownik, Outten &
17                              Golden LLP, New York, NY, *on the brief*) *for Plaintiff-*
18                              *Appellant*.
19
20                              ELISE M. BLOOM, Proskauer Rose LLP (Mark D. Harris,
21                              Patrick J. Lamparello, III, Joshua Fox, Mark W. Batten,

_____

[1] The Honorable John Gleeson, United States District Court for the Eastern
District of New York, sitting by designation.

Laura E. Deck, *on the brief*), New York, NY *for Defendants-Appellees.*

POOLER, *Circuit Judge*:

Plaintiff-Appellant John Chen brought suit against Major League Baseball Properties, Inc. and the Office of the Commissioner of Baseball ("Defendants") alleging violations of the minimum wage and recordkeeping provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., and the New York Labor Law ("NYLL"), §§ 190 et seq. & 650 et seq. Chen alleged that he worked without pay as a volunteer for FanFest, a five-day "interactive baseball theme park" organized in conjunction with Major League Baseball's 2013 All-Star Week. Defendants moved to dismiss the Complaint asserting that FanFest is a seasonal amusement or recreational establishment and therefore exempt from the FLSA's minimum wage requirements pursuant to 29 U.S.C. § 213(a)(3).[2] By opinion and order the United States District Court for the Southern District of New York (John G. Koeltl, *J.*) dismissed Chen's putative FLSA collective action

---

[2] 29 U.S.C. § 213 provides, in relevant part, that the minimum wage provisions of the FLSA "shall not apply with respect to . . . (3) any employee employed by an establishment which is an amusement or recreational establishment, organized camp, or religious or non-profit educational conference center, if (A) it does not operate for more than seven months in any calendar year." 29 U.S.C. § 213(a)(3).

3

1    claims and declined to exercise supplemental jurisdiction over his would-be

2    NYLL class action claims. Chen appeals.

3        We conclude that the term "establishment" for purposes of the amusement

4    or recreational establishment exemption to the FLSA means a distinct, physical

5    place of business, agree with the district court that the exemption applies to

6    FanFest, and do not reach the question of whether Chen was an employee.

7                                    **BACKGROUND**

8        We draw the following facts from Chen's first amended complaint

9    ("Complaint") and the documents incorporated therein by reference. Fed. R. Civ.

10   P. 10(c); *see Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) ("Documents that

11   are attached to the complaint or incorporated in it by reference are deemed part

12   of the pleading and may be considered."). We accept these facts as true for

13   purposes of our de novo review of the district court's grant of Defendants'

14   motion to dismiss. *See Gatt Commc'ns, Inc. v. PMC Assocs., L.L.C.*, 711 F.3d 68, 74–

15   75 (2d Cir. 2013).

16       In July 2013 Defendants organized a series of All-Star Week festivities

17   throughout New York City, the host city of that year's Major League Baseball

18   All-Star Game. These included a race, concert, fantasy camp, parade, and an

1    event called FanFest. Between July 12 and July 16, 2013, FanFest operated in the

2    Jacob K. Javits Center ("Javits Center") at 655 West 34th Street in New York City.

3    Defendants, who maintain an office at 245 Park Avenue in New York City,

4    described FanFest as "the largest interactive baseball theme park in the world."

5    App'x at 10, ¶2. The venue floor map distributed to patrons proclaims that

6    FanFest offers "[o]ver 450,000 [s]quare [f]eet to [h]it, [p]itch, [c]atch, [s]hop, [e]at

7    & [l]ive [b]aseball." Supp. App'x at 8. Activities at FanFest included baseball-

8    themed video games, photo booths, a simulated baseball dugout and fields,

9    baseball clinics, batting cages, music offerings, and autograph signing. In

10   addition, a news item referenced in the Complaint notes that "[a] green carpeted

11   replica baseball diamond" was constructed for the event. "MLB FanFest Touted

12   As 'Baseball Heaven on Earth,'" CBS New York, July 10, 2013, *available at*

13   http://newyork.cbslocal.com/2013/07/10/mlb-fanfest-touted-as-baseball-heaven-

14   on-earth/ (last visited Aug. 13, 2015). Memorabilia collections, a historical

15   presentation on the Negro Leagues, and the world's largest baseball were also on

16   display.

17        Defendants staffed the 2013 All-Star Week events primarily with

18   volunteers – some two thousand in total. The volunteers carried out a range of

1  duties including greeting customers, answering questions and providing

2  directions, taking tickets, checking credentials, staffing activities, and

3  distributing gifts. Chen alleges that although these individuals were identified as

4  volunteers, they expected and received compensation in the form of free

5  admission to events and in-kind benefits such as t-shirts, caps, drawstring

6  backpacks, fanny packs, water bottles, baseballs, lanyards, free admission to

7  FanFest for each volunteer and a guest, and a chance to win a pair of tickets to

8  the All-Star Game.[3]

9       Chen worked three shifts, totaling approximately fourteen hours, at

10 FanFest between July 12 and July 16, 2013. During his shifts, Chen stamped the

11 wrists of FanFest attendees, handed out bags of baseball paraphernalia, placed

12 paper flyers in bags, directed attendees to the exits, alphabetized liability

13 waivers, and worked at a fielding station instructing attendees to deposit the

14 balls they fielded into buckets. Prior to FanFest Chen also attended three hours of

15 mandatory information and orientation sessions in June and July, 2013, at Citi

16 Field, the site of the All-Star Game, and at the Javits Center. Chen received no

---

[3] Admission to FanFest in 2013 cost $35; the in-kind compensation received by volunteers was worth at least $40.

6

1    wages for the shift work or training sessions but was provided a t-shirt, cap,

2    drawstring backpack, water bottle, and baseball.

3         Alleging, inter alia, that Defendants failed to pay the minimum wage as

4    required under the FLSA, Chen filed suit. He moved the district court to certify a

5    collective action on behalf of himself and similarly situated volunteers who

6    worked without pay at various All-Star Week events since 2010. Defendants

7    moved to dismiss. Chen filed an amended complaint, which Defendants also

8    moved to dismiss, arguing that (1) Chen was not an employee for purposes of

9    the FLSA and (2) FanFest, as a seasonal amusement or recreational

10   establishment, as defined in 29 U.S.C. § 213(a)(3), was exempt from the FLSA's

11   minimum wage requirements. The district court granted the motion, concluding

12   that, on the face of the Complaint, FanFest qualified for the exemption, and it

13   declined to exercise supplemental jurisdiction over the NYLL claims. *Chen v.*

14   *Major League Baseball*, 6 F. Supp. 3d 449 (S.D.N.Y. 2014). Chen timely appealed.

15                                    **DISCUSSION**

16        This appeal centers principally on the meaning of the word

17   "establishment" as it is used in Section 13(a)(3) of the FLSA, which exempts

18   seasonal amusement and recreational establishments from the FLSA's minimum

7

1  wage requirements. *See* 29 U.S.C. § 213(a)(3). Chen contends that because the

2  district court held that "establishment" meant a distinct, physical place of

3  business, it erroneously concluded that FanFest was the relevant establishment

4  and was covered by the exemption. Chen argues instead that FanFest and Major

5  League Baseball, which Defendants concede is not covered by the exemption, are

6  a single establishment for purposes of the FLSA. The district court, in Chen's

7  view, should have applied the Department of Labor's ("DOL") multi-prong test

8  for determining whether a business unit is a separate establishment. This

9  approach looks not just to physical separation but also to whether the unit

10 operates separately and whether employees are shared between units – both fact-

11 intensive inquiries likely not resolvable from the face of the Complaint.

12      As this Circuit has not previously addressed the amusement or

13 recreational establishment exemption, we must determine, as a threshold matter,

14 the meaning of the term "establishment" for purposes of Section 13(a)(3). We

15 then turn to the question of whether, at the motion to dismiss stage, the district

16 court properly determined (on the facts alleged) that FanFest, as the relevant

17 establishment, is covered by the exemption.

18

**A.     Standard of Review**

We review de novo the dismissal of a complaint under Federal Rule of

Civil Procedure 12(b)(6), construing the complaint liberally and drawing all

reasonable inferences in the plaintiff's favor. *Sherman v. Town of Chester*, 752 F.3d

554, 560 (2d Cir. 2014). To withstand such a motion, a complaint must "contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.

Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). We review de novo the district court's

legal interpretation of a statute. *Price Trucking Corp. v. Norampac Indus., Inc.*, 748

F.3d 75, 79 (2d Cir. 2014).

**B.     The Meaning of "Establishment" for Purposes of 29 U.S.C. § 213(a)(3)**

When construing a statute, we begin with its language and proceed under

the assumption that the statutory language, unless otherwise defined, carries its

plain meaning; therefore, we "consider the ordinary, common-sense meaning of

the words" used in the statute. *United States v. Duaray*, 215 F.3d 257, 260 (2d Cir.

2000). "[A]bsent ambiguity," interpretation of the statute "will generally end

there." *Collazos v. United States*, 368 F.3d 190, 196 (2d Cir. 2004). However, where

a statute is ambiguous, we may look to legislative history to discern the

legislature's intent. *Gordon v. Softech Intern., Inc.*, 726 F.3d 42, 48 (2d Cir. 2013).

The FLSA was enacted to eliminate "labor conditions detrimental to the

maintenance of the minimum standard of living necessary for health, efficiency,

and general well-being of workers." 29 U.S.C. § 202(a). In that vein, the FLSA

mandates employers pay covered employees a minimum wage. *Id*. § 206. As we

have noted, the FLSA "is a remedial [statute], written in the broadest possible

terms so that the minimum wage provisions would have the widest possible

impact in the national economy." *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d

Cir. 1984). However, Congress also supplied certain exemptions, among these,

that the minimum wage provisions "shall not apply with respect to . . . any

employee employed by an establishment which is an amusement or recreational

establishment . . . if (A) it does not operate for more than seven months in any

calendar year." 29 U.S.C. § 213(a)(3). The term "establishment" is not defined in

the FLSA. Because the language of the statute does not itself plainly convey the

meaning Congress intended that term to impart, we turn to the legislative

history.

10

1    The amusement and recreational establishment exemption was originally

2    enacted in 1961 as an expansion of the exemption for certain retail and service

3    establishments under Section 13(a)(2) of the FLSA. Pub. L. No. 87–30, 75 Stat. 65,

4    71 (1961).[4] The Senate Committee Report describing the exemption reads:

5    (c) Amusement and recreational establishments operating on a
6    seasonal basis.—A similar exemption, without regard to the annual
7    sales volume of the enterprise, is provided for employees of
8    amusement and recreational establishments operating on a seasonal
9    basis. These establishments are typically those operated by
10   concessionaires at amusement parks and beaches and are in
11   operation for 6 months or less than a year.
12
13   S. Rep. No. 145, 87th Cong., 1st Sess., reprinted in 1961 U.S. Code Cong. &

14   Admin. News at 1620, 1647–48. In 1966 the exemption for amusement and

15   recreational establishments was removed from Section 13(a)(2) and a revised

16   exemption was created at Section 13(a)(3), where it remains today in amended

17   form. Pub. L. No. 89–601, Title II, § 201, 80 Stat. 830, 833 (1966); S. Rep. No. 1487,

---

[4] Our sister circuits have opined on the purpose underlying the exemption. The Tenth Circuit observed that the exemption "allow[s] recreational facilities to employ young people on a seasonal basis and not have to pay the relatively high minimum wages required by the [FLSA]." *Brennan v. Yellowstone Park Lines, Inc.*, 478 F.2d 285, 288 (10th Cir. 1973). The Sixth Circuit found "[t]he logical purpose of the provision is to exempt . . . amusement and recreational enterprises . . . which by their nature, have very sharp peak and slack seasons . . . . Their particular character may require longer hours in a shorter season, their economic status may make higher wages impractical, or they may offer non-monetary rewards." *Brock v. Louvers and Dampers, Inc.*, 817 F.2d 1255, 1259 (6th Cir. 1987).

11

1   89th Cong., 2d Sess. reprinted in 1966 U.S. Code Cong. & Admin. News 3002,

2   3030. Prior to the 1966 amendment, employees of an amusement or recreational

3   establishment operating on a seasonal basis were exempt only if the

4   establishment was also a "retail or service establishment" with more than half its

5   sales occurring in intrastate commerce. 29 U.S.C. § 213(a)(2)(ii) (1961) *repealed by*

6   Pub. L. 101-157, § 3(c), 103 Stat. 938, 939 (1989). The amended "wording seems to

7   have been intended to establish criteria for seasonality, and by eliminating the

8   'retail and service' language to make plain that employees of seasonal

9   amusement or recreational companies generally are exempt." *Marshall v. New*

10   *Hampshire Jockey Club, Inc.*, 562 F.2d 1323, 1329 (1st Cir. 1977). This rather limited

11   legislative history little aids our interpretation of "establishment."

12        However, the Supreme Court considered the meaning of "establishment"

13   under the now repealed Section 13(a)(2) exemption. In *A.H. Phillips, Inc. v.*

14   *Walling*, the Court found that "Congress used the word 'establishment' as it is

15   normally used in business and in government—as meaning a distinct physical

16   place of business." 324 U.S. 490, 496 (1945) (footnote omitted); *see Mitchell v.*

17   *Bekins Van & Storage Co.*, 352 U.S. 1027, 1027 (1957).[5] In so doing, the Court

---

[5] The legislative history supports this interpretation. During Senate floor
debates on a 1949 amendment that included the retail or service establishment

1    rejected the contention that the respondent's chain of grocery stores together

2    with its separate warehouse and central office serving those stores constituted a

3    single retail establishment within the meaning of the exemption. *See A.H. Phillips*,

4    324 U.S. at 496. Each of these physically separate business units was held to be a

5    distinct establishment within the meaning of the FLSA.

6          While the Supreme Court construed "establishment" for purposes of the

7    retail establishment exemption in *A.H. Phillips*, we perceive no basis to conclude

8    that Congress intended a different meaning under the amusement or recreational

9    establishment exemption, in particular as the latter provision was originally

10   enacted as part of the former. *See* Pub. L. No. 87–30, 75 Stat. 65, 71 (1961). In

11   addition, a House Committee Report discussing the 1961 amendment indicates

12   that Congress understood establishment to have the same meaning with respect

13   to the FLSA more generally. *See* H.R. Rep. No. 87-75, 13 (1961) (treating

14   construction activities as enterprises since "[t]he Committee believe[d] that

15   difficulty could arise in applying the concept[] of "establishment" . . . , as

---

exemption, Senator George, the amendment's sponsor, stated, "I wish to say that
the word 'establishment' has been very well defined in the Wage and Hour Act.
It means now a single physically separate place of business . . . and it does not
mean an entire business enterprise." 95 Cong. Rec. 12,579 (1949).

1   contained in the bill as introduced, [with respect to the proposed coverage of] the

2   construction industry, which performs its work . . . at many different job sites.").

3       Additionally, the currently applicable DOL regulations define

4   "establishment" for the purposes of Section 13(a) as a "'distinct physical place of

5   business,'" as opposed to "'an entire business or enterprise' which may include

6   several separate places of business." 29 C.F.R. § 779.23. This definition adopts the

7   meaning of the term "as it is normally used in business and in government, is

8   judicially settled, and has been recognized in the Congress in the course of

9   enactment of amendatory legislation." *Id*. (*citing A.H. Phillips*, 324 U.S. 490;

10  *Mitchell*, 352 U.S. 1027; 95 Cong. Rec. 12505, 12579, 14877 (1949); H.R. Rep. No.

11  81-1453, 25 (1949)). The regulations also specifically distinguish establishment

12  from a business enterprise: "The term establishment means a distinct physical

13  place of business rather than an entire business or enterprise." *Id*. § 779.203. In

14  contrast, an "enterprise may consist of a single establishment which may be

15  operated by one or more employers; or it may be composed of a number of

16  establishments which may be operated by one or more employers." *Id*. § 779.203

17  (internal citations omitted). Thus, a "multiunit" business or enterprise may

18  consist of "one company [that] conducts its single business in a number of

14

1    establishments." *Id*. § 779.204(b); *see id*. § 779.303 ("The term 'establishment[]' . . .

2    is not synonymous with the words 'business' or 'enterprise' when those terms

3    are used to describe multiunit operations."). The DOL provides as an example:

> [A] manufacturer may operate a plant for production of its goods, a
> separate warehouse for storage and distribution, and several stores
> from which its products are sold. Each such physically separate
> place of business is a separate establishment. In the case of chain
> store systems, branch stores, groups of independent stores
> organized to carry on business in a manner similar to chain store
> systems, and retail outlets operated by manufacturing or
> distributing concerns, each separate place of business ordinarily is a
> separate establishment.

14   *Id*. at § 779.303. The DOL's regulations are, as the district court found, "well-

15   reasoned, internally consistent, and generally consistent with judicial

16   interpretations of the exemption," *Chen*, 6 F. Supp. 3d at 456 n.4, and, as such,

17   supply a persuasive interpretation of the statute.[6]

18       Based on the foregoing, we conclude that Congress used the term

19   "establishment" for purposes of the exemption at Section 13(a)(3), 29 U.S.C. §

---

[6] The district court held that under *Long Island Care at Home, Ltd. v. Coke*,
551 U.S. 158, 172–74 (2007), these regulations merit limited deference as set forth
in *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). We agree that the regulations are
"particularly instructive," *Chen*, 6 F. Supp. 3d at 456 n.4., but as the parties do not
contest the level of deference to accord them and as the issue is not determinative
of our holding, we need not decide whether *Skidmore* is the appropriate standard
or whether the regulations are entitled to deference under *Chevron, U.S.A. Inc. v.
Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

1    213(a)(3), to mean a distinct, physical place of business as opposed to an

2    integrated multiunit business or enterprise. *See Brennan v. Yellowstone Park Lines,*

3    *Inc.*, 478 F.2d 285, 289–90 (10th Cir. 1973) (concluding that "'establishment' as

4    used in § 13(a)(3) is to be judged in the same light as that term is judged under §

5    13(a)(2)").

6         Chen acknowledges that this definition of establishment "applies

7    generally" to FLSA exemptions. Appellant's Br. at 29. However, he argues that

8    this meaning was intended for retail establishments only and that the DOL

9    applies an alternative fact-intensive, multi-factor test for seasonal exemptions.

10   We find neither of these arguments availing.

11        The DOL regulations defining establishment plainly are not limited to

12   retail endeavors. Although the relevant DOL regulations contained in 29 C.F.R. §

13   779 are entitled "The Fair Labor Standards Act as Applied to Retailers of Goods

14   or Services," Section 779.23 affirmatively states that it provides "the meaning of

15   the term as used in section[] . . . 13(a)" as a whole and is not restricted to any

16   particular exemption. As the DOL has noted, "Section 13(a)(3) of the amended

17   act does not require that the amusement or recreational establishment be a retail

18   or service establishment as was required under section 13(a)(2)(ii) of the prior

16

act." Dep't. of Labor, Opinion Letter, FLSA, 1967 DOLWH LEXIS 164 (June 22,

1967). Our sister circuits also looked to the regulations contained in 29 C.F.R. §

779 in the context of amusement and recreational establishments not primarily

engaged in the sale of goods or services. *See, e.g.*, *Chessin v. Keystone Resort Mgmt.,*

*Inc.*, 184 F.3d 1188, 1192–93 (10th Cir. 1999) (ski resorts); *Marshall*, 562 F.2d at

1330–31 (horse-racing track).

Nor do we find merit in Chen's contention that 29 C.F.R. § 779.305 applies

a multi-prong test to determine the relevant establishment for exemptions based

on the seasonality of operations. That regulation describes the test for

distinguishing whether "two or more physically separated portions of a business

though located on the same premises . . . may constitute more than one

establishment for purposes of the exemptions." *Id*. To be considered a separate

establishment the business unit seeking an exemption must (1) be "physically

separated from the other activities [performed at the same location]," (2) be

"functionally operated as a separate unit having separate records, and separate

bookkeeping," and (3) undertake "no interchange of employees between the

units." *Id*. Neither the explanatory text of the regulation nor its title, "[s]eparate

1  establishments on the same premises," indicates any relationship to the seasonal

2  exemption at issue here.

3      The agency opinion letters Chen cites do not establish that the DOL applies

4  this three-factor test to amusement or recreational establishments because of

5  their seasonality. DOL letters applying 29 C.F.R. § 779.305 do so because the

6  parties seeking agency guidance concerning the Section 13(a)(3) exemption had

7  multiple business units operating at the same premises. *See, e.g.*, Dep't of Labor,

8  Opinion Letter, FLSA, 1999 WL 1788159 (Sep. 22, 1999) (analyzing whether

9  various seasonal business activities conducted at same resort were separate

10  establishments using multi-factor test); Dep't of Labor, Opinion Letter, FLSA,

11  2004 WL 5303034 (Aug. 4, 2004) (applying multi-factor test where summer camp

12  seeking exemption was located on same premises as year-round horse stables);

13  Dep't of Labor, Opinion Letter, FLSA, 2009 WL 649013 (Jan. 15, 2009) (using 29

14  C.F.R. § 779.305 factors to determine whether concessionaire operating on

15  premises of host establishment was a separate establishment).

16      Ordinarily the agency interprets the term "establishment" to mean a

17  distinct physical place of business for purposes of the FLSA. *See, e.g.*, Dep't of

18  Labor, Opinion Letter, FLSA, 2003 WL 23374597, at *3 (Mar. 17, 2003) ("The

18

correct interpretation of the FLSA holds to a literal reading of the Act's text. . . .

The term establishment . . . refers to a distinct physical place of business."

(internal quotation marks and brackets omitted)). It applies this definition in the

context of the amusement or recreational establishment exemption where the

business units in question are not located at the same premises. *See, e.g.*, Dep't. of

Labor, Opinion Letter, FLSA, 1986 WL 797093, at *1-2 (Feb. 3, 1986) (employing

"distinct physical place of business" definition in advising city parks and

recreation department that employees of golf courses, swimming pools, summer

camps, ice skating rinks, and similar establishments located throughout the city

might qualify for the exemption).

Finally, the out-of-circuit cases to which Chen invites our attention are

similarly unavailing. In *Marshall*, where two business units operated at the same

racetrack at different times of the year, the First Circuit commented that physical

separation was not a factor relevant to determining if one or more establishments

existed for purposes of the FLSA since the operations of the two units did not

overlap temporally. 562 F.2d at 1331 n.3. Contrary to Chen's assertion, this

observation does not support the general application of the multi-factor test to

seasonal exemptions. The court resorted to the multi-factor test because

19

1    potentially separate establishments operated at the same physical location, not

2    because the seasonal exemption was at issue. 562 F.2d at 1330; *see Alvarez Perez v.*

3    *Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1157–58 (11th Cir. 2008)

4    (applying 29 C.F.R. § 779.305 factors where two racing associations shared same

5    facility but operated in different seasons).

6          Chen's reliance on baseball-related cases is similarly misplaced. *Bridewell v.*

7    *Cinncinnati Reds*, 68 F.3d 136, 138 (6th Cir. 1995), does not broadly define the

8    establishment there as encompassing all team-related activities anywhere;

9    instead, the Sixth Circuit found the Reds' operations at their stadium the relevant

10   establishment. Because Reds' maintenance employees ran the scoreboard,

11   operated the concessions, and cleaned the facilities year-round, the establishment

12   did not qualify as seasonal. *Id*. at 138–39. Chen also cites *Jeffery v. Sarasota White*

13   *Sox, Inc.*, 64 F.3d 590 (11th Cir. 1995), for the proposition that courts "eschew[] a

14   rigid one-factor test in favor of a functional one." Appellant's Br. at 33–34 . But

15   the Eleventh Circuit did not apply the multi-factor test in finding the White Sox's

16   baseball complex in Sarasota fell within the seasonal exemption and did not even

17   consider whether groundskeepers' operations were a separate establishment

18   apart from the baseball activities carried on at the complex. *Id*. at 593.

1    Nor is this case like *Brennan v. Goose Creek Consol. Ind. Sch. Dist.*, 519 F.2d

2  53 (5th Cir. 1975). There, female school janitors assigned to multiple schools

3  within the district brought suit for pay discrimination under the Equal Pay Act

4  ("EPA"), a part of the FLSA. The case presented a unique "situation where a

5  company's operations at different locations [we]re identical." *Id*. at 57. Noting

6  that a "broader interpretation of the word 'establishment' would be appropriate

7  outside the context of section 13(a)(2)," the Fifth Circuit concluded that where "a

8  central authority was responsible for the janitors' employment and wages and

9  often transferred them from one school to another," they worked for a single

10  establishment. *Id*. at 57–58. This case does not raise similar considerations, as

11  Chen does not allege he worked at various of Defendants' venues, performing

12  substantially the same work at each.[7]

13    In the instant case, Chen argues that although he physically worked at

14  FanFest, he was an employee of Defendants Major League Baseball and the

15  Office of the Commissioner of Baseball, who planned and controlled all aspects

16  of FanFest's operations. The Complaint clearly alleges that FanFest took place at

17  the Javits Center and not at the location of Defendants' Park Avenue office or any

---

[7] In distinguishing *Goose Creek*, we by no means foreclose the possibility that an alternative definition of establishment may arise under another provision of the FLSA or different factual scenario.

1    other All-Star Week event. This physical separation is determinative in deciding

2    whether these business units constitute a single establishment or multiple ones.

3    Where such business units are not located at the same premises, overlap in

4    operations and personnel is immaterial to determining whether they are separate

5    establishments. *See Chessin*, 184 F.3d at 1192–93 (finding that where ski areas

6    were separated by six miles "issues of business integration are not dispositive in

7    determining whether establishments are separate" for purposes of amusement or

8    recreational establishment under 29 U.S.C. § 13(b)(29)); *Mitchell v. Birkett*, 286

9    F.2d 474, 478 (8th Cir. 1961) (holding, for purposes of the retail exemption, that

10    "[c]ommon ownership and close functional and economic relationship between

11    physically separated units of a business are not sufficient to make such combined

12    units a single establishment, particularly where, as here, the geographic

13    separation is substantial"). Thus, we agree with the district court that for

14    purposes of the Section 13(a)(3) exemption, FanFest constitutes a separate

15    establishment.

16    **C.    Seasonal Amusement or Recreational Establishment**

17            The application of an exemption to the FLSA is an affirmative defense,

18    *Corning Glass Works v. Brennan*, 417 U.S. 188, 196–97 (1974), which may be raised

22

in a pre-answer Rule 12(b)(6) motion "if the defense appears on the face of the

complaint," *Iowa Pub. Emps. Ret. Sys. v. MF Global, Ltd.*, 620 F.3d 137, 145 (2d Cir.

2010) (internal quotation marks omitted). A plaintiff is not required to plead the

absence of such a defense. *Black v. Coughlin*, 76 F.3d 72, 75 (2d Cir. 1996). Because

the FLSA is a remedial law, exemptions "are to be narrowly construed against

the employers seeking to assert them and their application limited to those

establishments plainly and unmistakably within their terms and spirit." *Davis v.*

*J.P. Morgan Chase & Co.*, 587 F.3d 529, 531 (2d Cir. 2009) (quoting *Arnold v. Ben*

*Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)). Thus, an employer invoking an

exemption to the FLSA bears the burden of proving that the establishment is

covered by the exemption. *See Arnold*, 361 U.S. at 394 n.11; *cf. Mullins v. City of*

*New York*, 653 F.3d 104, 113 (2d Cir. 2011) ("The employer who invokes the

exemption bears the burden of establishing that the employee falls within the

exemption.").

 To prevail on their motion to dismiss, Defendants must establish that

FanFest is plainly and unmistakably (1) seasonal and (2) a recreational or

amusement establishment under the FLSA. FanFest clearly meets the seasonality

requirement of Section 13(a)(3), and Chen does not appear to contend otherwise.

23

1   The Complaint alleges FanFest ran from July 12 to July 16, 2013. As such, it did

2   "not operate for more than seven months in any calendar year." 29 U.S.C.

3   213(a)(3)(A). Thus, the only remaining issue is whether the amusement or

4   recreational nature of FanFest is evident from the face of the Complaint.

5   The district court noted that it was undisputed[8] that FanFest was a "sports

6   event" and that the Complaint itself described FanFest as a "theme park." *Chen*, 6

7   F. Supp. 3d at 456. Either description, the district court concluded, was sufficient

8   to find FanFest fell squarely within the coverage of the exemption. *Id*. We agree.

9   As Congress did not define "amusement" or "recreation," we consider the

10   "ordinary, common-sense meaning" of these terms. *Dauray*, 215 F.3d at 260.  We

11   note that the DOL regulations define amusement or recreational establishments

12   broadly as "establishments frequented by the public for its amusement or

13   recreation," and notes "concessionaires at amusement parks" as examples of

14   potentially exempt establishments. 29 C.F.R. § 779.385.

---

[8] In opposition to Defendants' motion to dismiss, Chen argued only that the Complaint did not plead facts that would allow the court to determine that the MLB operated for less than seven months, that the MLB is itself an establishment, or that FanFest is a separate establishment. Pl's Memorandum of Law in Opposition to Motion to Dismiss, at 17-22, No. 13-cv-5494-JGK, Dkt. No. 40 (S.D.N.Y. Mar, 27, 2014). But Chen did not argue that the district court would be unable to discern the amusement or recreational character of FanFest from the face of the Complaint.

1    FanFest, as a gathering of sports enthusiasts for the purposes of

2    entertainment—comprising of games, sporting activities, and exhibitions—

3    clearly fits within the plain meaning of these terms. While FanFest is not a sports

4    venue in the same manner as a baseball stadium or a racecourse, the Complaint

5    and event map make clear that FanFest consisted in large part of interactive

6    sporting activities, including various training, batting, base-running, pitching,

7    and fielding simulations for attendees. In addition, the Complaint notes that the

8    MLB promoted FanFest as a "baseball theme park," App'x at 10, with "[o]ver

9    450,000 [s]quare [f]eet to [h]it, [p]itch, [c]atch, [s]hop, [e]at & [l]ive [b]aseball,"

10    Supp. App'x at 8. Thus, FanFest's mix of offerings was quite similar to that of an

11    amusement park or carnival, both of which fall within the meaning of an

12    amusement or recreational establishment.

13    Chen does not specifically dispute the district court's conclusion that

14    FanFest is of an amusement or recreational character within the meaning of

15    Section 13(a)(3). Instead, he contends that FanFest should be considered a

16    "convention" under the DOL's Field Operation Handbook ("Handbook"), which

17    provides that "[e]mployees at a convention (including those employed by a

18    concessionaire) are not within the scope of the Sec 13(a) exemption as a

1    convention is not considered an exempt establishment." Dep't of Labor, Field

2    Operations Handbook § 25j05 (1994). The term "convention," however, is not

3    defined in the Handbook, and Chen has not directed us to any case law

4    interpreting the term in this context. A DOL opinion letter noting that

5    conventions are not within the scope of the exemption provided by Section

6    13(a)(3) does not define convention and merely states that "a convention is not an

7    amusement or recreational establishment." Dep't. of Labor, Opinion Letter,

8    FLSA, 1967 DOLWH LEXIS 164 (June 22, 1967). Chen argues that "convention"

9    should be read broadly as, for example, "an organized meeting of enthusiasts,"

10    suggesting that a meeting of baseball enthusiasts such as FanFest would qualify

11    as a convention. As a factual predicate for this argument, Chen notes that apart

12    from the interactive sporting activities on offer, FanFest included memorabilia

13    displays and a collectors' showcase where attendees could buy, sell, or trade

14    baseball cards, similar to a baseball card convention. For their part Defendants

15    correctly note that the word convention might just as plausibly be construed

16    more narrowly to cover industry conventions, such as for buyers and sellers of

17    baseball equipment. In addition, the fact that a limited number of activities

18    offered by FanFest may have been more akin to activities characteristic of a

1    convention does not alter its overall amusement or recreational character. An

2    amusement park that includes a historical display on its roller coasters or a

3    raceway that holds an occasional swap meet for classic automobile collectors is

4    no less an amusement or recreational establishment.

5        We are unpersuaded by Chen's arguments. The Handbook does not have

6    the force of law, *Gummo v. Village of Depew, N.Y.*, 75 F.3d 98, 108–09 (2d Cir. 1996),

7    and is entitled to deference only to the extent that it has the "power to persuade,"

8    *see Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000). As the Handbook

9    provision is ambiguous and as Chen does not effectively challenge that FanFest

10    is a sports event or theme park, we decline to defer to the DOL's guidance to the

11    extent that it conflicts with Congress's plain intent to exempt amusement and

12    recreational establishments.

13        Cognizant that FLSA exemptions are to be narrowly construed against the

14    employer, we nonetheless conclude that FanFest "plainly and unmistakably"

15    falls within the "terms and spirit" of the exemption provided by Section 13(a)(3)

16    as a seasonal amusement or recreational establishment. *See Davis*, 587 F.3d at 531.

17    The applicability of an FLSA exemption—a necessarily fact-bound inquiry—

18    often will not be ascertainable on the basis of the complaint alone. However, here

1     the Complaint's numerous specific factual allegations, supplemented by its

2     reference to dozens of related webpages, news items, and other documents,

3     plainly establish the factors determinative of the exemption.

4     **CONCLUSION**

5     For the foregoing reasons we affirm the judgment of the district court.